Ruth WONG, Plaintiff,

v.

The CITY OF NEW YORK, HUMAN RESOURCES ADMINISTRATION and George Gross, in his official capacity as Commissioner of the Human Resources Administration, Defendants.

No. 85 Civ. 4981.

United States District Court,
S.D. New York.

Aug. 8, 1986.

Shneyer & Shen, New York City, for plaintiff; Michael Shen, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for defendants; Sharon G. Hyman, Asst. Corp. Counsel, of counsel.

STANTON, District Judge.

Plaintiff Ruth Wong brings this action against the Human Resources Administration of the City of New York ("HRA"), Ms. Wong's former employer, and against George Gross, HRA's commissioner, alleging that HRA failed to pay her overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a) and 215, and that HRA failed to pay her regular wages, in breach of the parties' employment contract. The defendants move pursuant to Fed.R.Civ.P. 56 for summary judgment.[1] The motion is granted.

The parties do not disagree over the material facts. Plaintiff was employed by HRA as a "houseparent" from June, 1983 to June, 1984 pursuant to the terms of a collective bargaining agreement between New York City and the Social Services Employees' Union, Local 371, AFSCME, AFL–CIO. (Aff. of Ruth Wong, ¶ 2; Aff. of Michael G. Davies, ¶ 2.) Houseparents provide supervision and care for neglected or emotionally disturbed children, foster children, or other persons in need of supervision (see N.Y. Family Court Act § 712(a)) in group homes operated by the Department of Social Services of HRA, pursuant to N.Y. Social Services Law § 374–c. (Wong Aff., ¶ 9; Aff. of June Nearon, ¶¶ 2, 3.) Houseparents are on call at their group homes 24 hours a day for ten days of each fourteen-day work period. (Wong Aff., ¶ 5; Nearon Aff., ¶ 5.)

Plaintiff claims that though defendants required that she work over forty hours each week, she was not paid for her overtime hours as required by the FLSA, 29 U.S.C. § 207(a). The defendants argue

---

1. Defendants also moved pursuant to Fed.R. Civ.P. 12(c) for judgment on the pleadings, but since plaintiff has submitted her affidavit and exhibits, defendants' motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(c); *see also Grand Union Co. v. Cord Meyer Development Corp.*, 735 F.2d 714, 716–717 (2d Cir.1984).

that plaintiff was exempt from the overtime provision of the FLSA under *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and that in any case the Fair Labor Standards Amendments of 1985 (the "FLSA Amendments"), 99 Stat. 787, preclude defendants' liability for the alleged violations of the FLSA overtime provision which took place before April 15, 1986.

The overtime provision of the FLSA provides that an employee who is not otherwise exempt is entitled to receive overtime pay at a rate not less than one and one-half times his regular rate of pay for hours worked in excess of forty hours in a single work week. 29 U.S.C. § 207(a). It was enacted both to encourage employers to hire additional workers and to insure that employees are compensated for the strain of working over forty hours in one week. *See Bay Ridge Operating Co., Inc. v. Aaron,* 334 U.S. 446, 469–471, 68 S.Ct. 1186, 1199–2000, 92 L.Ed. 1502 (1948); *Donovan v. Brown Equipment and Service Tools, Inc.,* 666 F.2d 148, 152 (5th Cir.1982).

The applicability of § 207(a) to state and local government employees has been Protean. The original version of the FLSA passed in 1938 specifically excluded such employees from its coverage, but in 1966 Congress extended the FLSA to apply to certain school, hospital, nursing home and transit employees of states and localities. 80 Stat. 830. That extension of the statute's coverage was sustained by the Supreme Court in *Maryland v. Wirtz,* 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968).

In 1974 Congress further extended the FLSA to apply to almost all state and local government employees. 29 U.S.C. § 203(d) and (x). In *National League* the Court overruled *Wirtz* and struck down the 1974 extension of the FLSA's coverage, holding that the Commerce Clause did not empower Congress to enforce the minimum-wage and overtime provisions of the statute against the states "in areas of traditional governmental functions." *Id.,* 96 S.Ct. at 2474. Pursuant to *National League* the

Department of Labor in 1979 issued final regulations defining such areas as libraries, schools, museums, hospitals, fire prevention, police protection, sanitation, public health and parks and recreation as traditional governmental functions of states and localities, 29 C.F.R. § 775.4; and defining state or local government operation of railroads, liquor stores, off-track betting corporations, local mass-transit systems, electric power companies, telephone and telegraph systems, sewage by-product businesses, agricultural concerns and marine repair and maintenance businesses as nontraditional, 29 C.F.R. § 775.3.

In *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Court overruled *National League. Garcia* holds that any limits on Congress' power under the Commerce Clause to impose its will upon the states properly derive not from judicial assessments of whether federal legislation infringes on "traditional" state prerogatives, but rather from the structural arrangement of our federal system, through which the states may act to protect their sovereign interests. *See Garcia,* 105 S.Ct. at 1016–1020; *Welch v. State Department of Highways and Public Transportation,* 780 F.2d 1268, 1275–1276 (5th Cir.1986) (en banc) (Higginbotham, J., concurring specially), *petition for cert. filed,* 54 U.S.L.W. 3730 (U.S. April 21, 1986); *Dressman v. Costle,* 759 F.2d 548, 557 (6th Cir.1985). In upholding the application of the FLSA to employees of a public mass-transit authority, the Court stated:

[W]e need go no further than to state that we perceive nothing in the overtime and minimum-wage requirements of the FLSA, as applied to [defendant] SAMTA, that is destructive of state sovereignty or violative of any constitutional provision.

... Congress has not simply placed a financial burden on the shoulders of States and localities that operate mass-transit systems, but has provided substantial countervailing financial assistance as well, assistance that may leave individual mass transit systems better

off than they would have been had Congress never intervened at all in the area.

. . . .

... The political process ensures that laws that unduly burden the States will not be promulgated. In the factual setting of these cases the internal safeguards of the political process have performed as intended.

*Garcia,* 105 S.Ct. at 1020.

One dramatic result of *Garcia* was the elimination of the exemption from FLSA overtime liability previously enjoyed by states and localities in areas of traditional governmental functions. Out of concern for the financial burden likely to be thus imposed upon state and local governments by the *Garcia* ruling, Congress enacted the FLSA Amendments. Among other things, they adjust "certain FLSA principles with respect to employees of states and their political subdivisions and [defer] the effective date of certain provisions of the FLSA insofar as they apply to the States and their political subdivisions." S.Rep. No. 159, 99th Cong., 1st Sess. 8, *reprinted in* 1985 U.S.Code Cong. & Ad. News 651, 655 (herinafter "S.Rep."); *see also* H.Conf.Rep. No. 357, 99th Cong., 1st Sess. 9, *reprinted in* 1985 U.S.Code Cong. & Ad. News 668, 671 ("Under the Senate bill and the House amendment public agencies are shielded from liability for violations of [the overtime provision] of the FLSA which occur before the effective date, April 15, 1986.").

In the FLSA Amendments Congress defined the extent of the exemption from overtime liability it intended to afford states and localities by reference to the special enforcement policy of the Secretary of Labor set forth in 29 C.F.R. §§ 775.2–775.4. Section 2(c) of the FLSA Amendments provides that no state or locality shall be liable for violations of the FLSA overtime provision occurring before April 15, 1986 where the employee involved was not covered by the "Secretary of Labor's special enforcement policy on January 1, 1985, [which policy is] published in sections 775.2 and 775.4 of title 29 of the Code of Federal Regulations." 99 Stat. 788, *reprinted in* 1985 U.S.Code Cong. & Ad. News.

Under the special enforcement policy the Secretary of Labor designated certain state and local government functions as nontraditional, and therefore falling within the FLSA overtime provision, either by notifying the particular state or locality directly, or by including the activity in a list of nontraditional functions published at 29 C.F.R. § 775.3. *See* 29 C.F.R. § 775.2(b) As to those functions designated as nontraditional, the FLSA Amendments have no effect on the liability of states and localities for overtime violations. 99 Stat. 791, *reprinted in* 1985 U.S.Code Cong. & Ad. News. The combined effect of the FLSA Amendments and the Secretary of Labor's special enforcement policy is thus to exempt states and localities from liability for FLSA overtime violations occurring before April 15, 1986, unless the employee worked in one of the activities designated as nontraditional by the Secretary of Labor as of January 1, 1985. *See Kartevold v. Spokane County Fire Protection District,* 625 F.Supp. 1553, 1559–1561 (E.D.Wash.1986); S.Rep. at 663, 667–668.

The crucial point to the determination of this motion is that Congress defined the scope of the exception to the liability-limiting FLSA Amendments not by using the "traditional function" rule from *National League,* but by using the specific list of non-traditional functions established by the special enforcement policy. Therefore, determining whether an action against a state or locality for overtime pay under the FLSA is precluded by the FLSA Amendments does not require analysis of the particular function under *National League.* The applicable rule is that only a state or local government employee who worked in one of the areas designated as nontraditional may bring an action for overtime violations which occurred before April 15, 1986. *Cf. O'Quinn v. Chambers County,*

*Texas,* 636 F.Supp. 1388 (S.D.Tex.1986); *Kartevold,* 625 F.Supp. at 1562.[2]

Plaintiff's position as a houseparent is not listed in § 775.3, nor is it even slightly related to the functions included in that regulation. Nor did the Secretary of Labor give notice to the City of New York prior to January 1, 1985 that houseparenting is a nontraditional function. (Defendants' Memorandum of Law at 8.) The FLSA Amendments therefore preclude defendants' liability under the FLSA for the overtime violations alleged by the plaintiff to have occurred before April 15, 1986. Accordingly defendants are entitled to judgment as a matter of law on plaintiff's FLSA claim.

Since jurisdiction over plaintiff's contract claim is based upon this court's pendent jurisdiction, it should be dismissed along with her FLSA claim. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Boardman v. Lipton,* 605 F.Supp. 970, 972 (S.D.N.Y.1985). The Clerk is directed to dismiss plaintiff's complaint.

So ordered.

---

2. The FLSA Amendments were enacted in November, 1985, but were made effective on April 15, 1986. Ordinarily the postponement of a statute's effective date is evidence of a legislature's desire that it be given only prospective application. *See Buccino v. Continental Assurance Co.,* 578 F.Supp. 1518, 1527 (S.D.N.Y.1983). However, when Congress manifests a clear legislative intent that a statute be applied retroactively, as it did here with respect to the FLSA Amendments, *see* S.Rep. at 663, 667–668, the general rule of prospective application does not apply. *See Weise v. Syracuse University,* 522 F.2d 397, 410–411 (2d Cir.1975); *O'Quinn,* 636 F.Supp. at 1390 (holding that retroactive application of FLSA Amendments did not violate employees' due process rights); *Kartevold,* 625 F.Supp. at 1562–1563 (applying FLSA Amendments retroactively).