**Norman C. CONWAY, et al.**

v.

**TAKOMA PARK VOLUNTEER FIRE DEPARTMENT, INC., et al.**

**Civ. A. No. HM86–1611.**

United States District Court,
D. Maryland.

July 30, 1987.

Thomas A. Woodley and Mulholland & Hickey, Washington, D.C., for plaintiffs.

J. Craig Peyton and Ford & Marrison, Atlanta, Ga., Anna Mary Culver and Shawe & Rosenthal, Baltimore, Md., for defendants.

## MEMORANDUM & ORDER

HERBERT F. MURRAY, District Judge.

The plaintiffs in this action are over four hundred fire and rescue service employees who work for the various Montgomery County fire and rescue corporations.[1] They bring this action against their employers, fifteen of the eighteen fire and rescue corporations currently providing services in Montgomery County, alleging that the defendant corporations have wilfully violated the Fair Labor Standards Act ["FLSA" or the "Act"], 29 U.S.C. § 201 *et seq.*, by failing to pay plaintiffs "overtime compensation" as required by § 207(a) of the Act.

The defendants, on the other hand, argue that they are not subject to § 207(a) of the FLSA for two reasons. First, they point out that the Act applies only to employers whose employees are engaged in interstate commerce, and argue that the plaintiffs are not engaged in interstate commerce.

Second, defendants argue that even if the court concludes that the Act applies, the defendants fall within the scope of the limited exemption to overtime for firefighters, set forth in § 207(k) of the Act.

Both sides have moved for summary judgment on the issue of liability, and agree that it is a question of law whether the defendants are subject to § 207(a) of the FLSA, and, if so, whether the defendants fall within the scope of the § 207(k) exemption.

Also pending before the court are defendants' motions to dismiss for failure to join an indispensable party. Defendants argue that Montgomery County is an indispensable party in this action, and that, pursuant to Rule 19 of the Federal Rules of Civil Procedure, should be joined as a party, or the action should be dismissed.

The court has reviewed the memoranda and exhibits submitted by the parties, and heard the argument of counsel at a hearing on Friday April 10, 1987, and is now prepared to rule.

## I. FACTUAL BACKGROUND

Fire and rescue services in Montgomery County are provided by eighteen separate and independently chartered fire departments. These departments were started years ago as volunteer citizen organizations, but as the population of Montgomery County increased, the organizations grew to include paid firefighters as well as volunteers.

For many years, a representative from each corporation served on a County Fire Board, which acted as a link between the County government and the independent fire departments. In 1949, when the first Montgomery County Council took office, a Department of Public Safety, with a Division of Fire Protection headed by a Fire Marshall, was created. The Fire Marshall's duties mainly concerned fire prevention, while the management, operation, training, and fiscal matters pertaining to the delivery of fire and rescue services remained under the control of the separate independent corporations. (Exhibit # 2 at pp. 4–7, Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment, Paper # 31.)

In 1967, the County Council enacted Bill No. 1 which substantially changed fire and rescue services in Montgomery County. Bill No. 1 established a Department of Fire and Rescue Protection, brought all associated services under the control and supervision of a single County Fire Chief, and made all the paid fire fighters County merit system employees. *Id.*

The corporations opposed Bill No. 1, and through a petition drive, qualified the issue for a referendum. In the general election held in November 1968, Bill No. 1 was

---

**1.** While some of the plaintiffs are firefighters and others are rescue workers, the court will, for simplicity's sake, refer to plaintiffs collectively as "firefighters."

defeated by more than a two to one margin. *Id.*

In 1969, the Montgomery County Council passed a bill which doubled the size of the Fire Board, and gave the Board additional duties for establishing response areas, training standards and other matters. In 1972, the Council enacted another bill which created the Department of Fire and Rescue Services ["DFRS"] under the supervision of a director with authority over centralized dispatch/communications, individual training and the fire prevention activities of the Fire Marshall. *Id.*

In 1979, the Montgomery County Executive proposed Bill No. 16–79, which would centralize the fire and rescue services under a single fire chief appointed by the Executive, would convert all paid firefighters to County merit system employees, and would centralize other aspects of the delivery of fire and rescue services in the County. At the same time, the Montgomery County Council considered proposed Bill No. 15–79, also dealing with fire services in the County. After a period of debate, the Council passed a hybrid measure known as Bill No. 15/16–79. *Id.* This legislation became effective July 1980, and was codified as Chapter 21 of the Montgomery County Code. (Exhibit # 1, Plaintiffs' Paper # 31.)

Bill No. 15/16–79 did not include the centralization of fire and rescue services which was part of proposed Bill No. 16–79. Instead, the "County chose to provide fire and rescue services through independent fire and rescue corporations." (Exhibit # 2 at p. 7, Plaintiffs' Paper # 31)

In June 1985, over 350 employees of the corporations filed administrative claims requesting overtime compensation under the FLSA. In response, the Office of the County Attorney sought an opinion from the U.S. Department of Labor ["DOL"] as to whether § 207(k) applied to the corporations. Section 207(k) provides a limited exemption from overtime payments to firefighters employed by a "public agency."

On March 18, 1986, the Department of Labor issued its finding that the corporations were not "public agencies" under the FLSA, and thus could not take advantage of the overtime exemption under § 207(k). (Exhibit # 3, Plaintiffs' Paper # 31) The Department of Labor concluded that the claimants were entitled to overtime compensation after working forty hours a week.

In spite of the Department of Labor's opinion letter, the defendants did not provide the plaintiffs with the relief sought, so plaintiffs filed the instant lawsuit.

## II. LEGAL ANALYSIS

■ Section 7(a) of the FLSA, 29 U.S.C. § 207(a), provides that employers whose employees are engaged in interstate commerce shall pay their employees overtime compensation after the employees have worked forty hours in a workweek. The congressional purpose in enacting this section was twofold: (1) to spread employment by placing financial pressure on employers to hire additional employees rather than have current employees work longer hours, and (2) to compensate employees for the burden of working long hours. *Walling v. Helmerich & Payne,* 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29 (1944).

There is no dispute that the plaintiffs in this case have not been paid overtime in accordance with this section of the Act. The defendants assert that they are not required to pay overtime to the plaintiffs after a 40–hour workweek, and set forth several interrelated legal arguments in support of that position. Their key argument, however, is that they are entitled to take advantage of the § 207(k) exemption for public agency employees engaged in fire protection activities.

### A. *Threshold Issues*

Before the court reaches the issue of the applicability of § 207(k), there are two threshold issues it must address. The first is the weight to be given to the opinion letter from the Department of Labor, dealing with the same issue raised in this lawsuit. Plaintiffs, in whose favor the Labor Department found, argue that the court should defer to the decision of the DOL, since it is the agency given the task of

interpreting and implementing the relevant statute. Defendants, understandably, ask the court to reject the Department of Labor opinion.

■ The court agrees with the plaintiffs that the Department of Labor opinion is to be given some weight. As the Supreme Court made clear in *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), a court should accord great deference to the interpretation of a statute adopted by the agency charged with its daily administration. However, the court agrees with the defendant that the court's deference need not be as great when the agency is interpreting a statute, as when the agency is interpreting one of its own regulations. In the instant case, the court will treat the DOL's analysis as one of several factors to be considered in determining the manner in which the FLSA applies in the instant case. However, the court notes that even if it were to disregard the DOL opinion, as requested to by the defendants, the court's decision would not be affected, since the court has independently reached reached the same conclusions as those reached by the DOL.

The second threshold issue is whether the FLSA applies in this case at all. Although not an issue raised in the County Attorney's request for an opinion by the DOL, the defendants now assert that the FLSA does not apply since the plaintiffs are not employees engaged in interstate commerce.

The provisions of the FLSA apply if either an employer or its employees are engaged in interstate commerce. 29 CFR Part 776. In determining whether employees are engaged in interstate commerce for purposes of the FLSA, the court notes that "the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce." *Walling v. Jackson Paper Co.*, 317 U.S. 564, 567, 63 S.Ct. 332, 335, 87 L.Ed. 460 (1943).

■ In the instant case, the facts indicate that plaintiffs respond to emergencies on state roads and interstate highways over which commerce between the states flows, and thus help remove obstructions so as to enable commerce to move freely. This fact satisfies the "interstate commerce" prerequisite for FLSA jurisdiction. *Benson v. Universal Ambulance Service*, 675 F.2d 783, 786 (6th Cir.1982); *Witz v. A–1 Ambulance Service, Inc.*, 299 F.Supp. 197, 201 (E.D.Ark.1969) (ambulance emergency crews who respond to accidents on city streets, state highways and interstate highway systems are engaged in commerce within the meaning of the FLSA).

In addition, plaintiffs regularly perform their work in connection with other "instrumentalities" of commerce including railroad rights-of-way, waterways, and the interstate METRO passenger commuter lines. They use equipment that has been manufactured out of state and moved in interstate commerce; they use telephone lines, and other interstate means of communications. They cross state lines to respond to emergencies, to transport patients, to deliver apparatus, to receive training and education, and the corporations and their employees are subject to the mutual aid arrangement that exists among Washington, D.C. and various counties in Virginia and Maryland. *See* Plaintiffs' Paper # 31, ftnts 9–13, at pp. 30–31, and portions of depositions cited therein. Based on these uncontested facts, the court concludes that the plaintiffs are engaged in commerce within the meaning and coverage of the FLSA.

B. *Applicability of § 207(k) Exemption*

Section 207(k), entitled "Employment by public agency engaged in fire protection or law enforcement activities," provides that no public agency shall be deemed to have violated § 207(a) with respect to the employment of firefighters, if the firefighters are paid according to the formulas set forth in subparts 1 and 2 of the section.[2]

2. (k) Employment by public agency engaged in fire protection or law enforcement activities

No public agency shall be deemed to have violated subsection (a) of this section with re-

These formulas take into account the fact that employees engaged in fire protection activities are often "on call" twenty-four hours a day, and that the typical 40–hour workweek is not an appropriate model for calculating overtime compensation. Defendants argue that this "exemption" for public agency employees engaged in fire protection activities should apply to defendants, and that they should be allowed to calculate overtime in accordance with the formula in subparts 1 and 2, and not by the 40–hour workweek in § 207(a).

■ As a preliminary matter, it is clear that the § 207(k) exemption does not apply to an employee merely because he or she is engaged in fire protection activities. Firefighters employed by private companies are not within the scope of the exemption. Rather, it applies only to employees of "public agencies." Thus, the fact that a private company may contract with a state or local government to provide fire protection services does not mean that the private company may take advantage of the § 207(k) exemption. *See* 29 CFR § 553.1(c) ("These statutory provisions, as is apparent from their terms, are limited to public agencies and do not apply to any private organization engaged in furnishing fire protection or law enforcement services, and this is so even if the services are provided under contract with a public agency.") While the money used to pay "overtime" to the private firefighters might ultimately come out of the State's pocket, this does not make the private employer a "public agency." Thus, the key issue before the court is whether defendants are "public agencies."

The term "public agency" is defined in § 203(x) of the Act as "the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States ..., a State, or political subdivision of a State; or any interstate governmental agency." [3] It is clear that the only category into which defendants might arguably fall is a "political subdivision of a State."

The task of determining whether defendant corporations are "public agencies" or merely "private corporations" is difficult, since the undisputed facts show that they have attributes of both. Thus, while the defendant corporations are privately incorporated, hold property in their own right, receive private funds, can sue and be sued in their own names, enter into ordinary contracts with firms to provide a variety of services, and operate under their own standard operating procedures, they also receive substantial tax funds from the County, hire their employees pursuant to civil service rules, and receive other County support services such as testing of job applicants, affirmative action guidelines, training and communications. The parties do not dispute these facts, but place a different emphasis on their relative importance.

Determining the applicability of § 207(k) to defendant corporations is further made difficult by the fact that courts have had little opportunity to construe § 207(k) because of the Supreme Court decision in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245

spect to the employment of any employee in fire protection activities ... if—

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average numbers of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours ... bears to 28 days,

compensation at a rate of not less than one and one-half times the regular rate at which he is employed.

3. *See also* U.S. Dept. of Labor's Final Rule, 29 CFR § 553, "Application of FLSA to Employees of State and Local Governments." Under 29 CFR § 553.1(c), the term "public agency" in FLSA is defined to mean "a State, a political subdivision of a State or an interstate governmental agency." *Federal Register*, Vol. 52, No. 11, Jan. 16, 1987, p. 2032.

(1976) [hereinafter *"Usery"*]. In *Usery,* the Supreme Court held that the FLSA could not be applied to state and local government employees who performed "traditional governmental functions", including such activities as fire fighting and law enforcement. *Usery* was ultimately overruled in *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), but during the period *Usery* was law, the courts were not called upon to interpret § 207(k).

Plaintiffs argue that, in light of these factors, the court should determine whether defendant corporations are "political subdivisions" by looking at the way in which courts have interpreted that term in another federal labor statute, the National Labor Relations Act, ["NLRA"], 29 U.S.C. § 152(2). The term "political subdivision" appears in the NLRA, but is not defined. Thus, a body of case law has developed which interprets the term.

■ The defendants, on the other hand, assert that the court should analyze the manner in which the corporations are organized, funded, and connected to the Montgomery County government, and then weigh the "public" qualities against the "private" qualities. The defendants are confident that by doing so, the court would find that the "public" and "governmental" nature of the corporations far outweighs any residual "private" quality.

■ The court rejects the approach suggested by the defendants. The court has reviewed the factors emphasized by the two sides, and does not believe that the "public" nature of the corporations outweighs their "private" nature. Because of this, the court believes that the better approach is to look at the way courts have approached the same issue in the context of another federal labor statute, the NLRA; to give weight to the DOL's opinion; to look to congressional intent behind the FLSA; and to look at the position taken by Montgomery County itself on the issue of whether plaintiffs are County employees.

*(1). The term "political subdivision" in the NLRA*

■ Both the NLRA and the FLSA are federal labor statutes which provide employers and employees with various rights and obligations. In both statutes, however, Congress has attempted to relieve state and local governments (as employers) from certain of the obligations. Thus, in § 152(2) of the NLRA, state and local governments are exempted from the obligation imposed by the NLRA of engaging in collective bargaining with their employees, and in § 207(k) of the FLSA, state and local governments are exempt from paying overtime after a 40–hour workweek to their firefighters. In creating these exemptions, Congress used similar terminology in each statute to describe those entities to which the exemptions would apply: "public agency" and "political subdivision". The court believes that it is appropriate to use the analysis developed in NLRA cases to determine when an organization qualifies as a "political subdivision" under the FLSA so as to be relieved of certain obligations. Further, and more importantly, the court notes that the DOL, the agency charged with enforcing the FLSA, has also made the determination that this is the appropriate analysis. The DOL has proceeded to apply this analysis in FLSA cases, as have other courts.

In *National Labor Relations Board [NLRB] v. Natural Gas Utility District of Hawkins County, Tennessee,* 402 U.S. 600, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971), [hereinafter *"Hawkins County"*], the Supreme Court approved the NLRB's interpretation of "political subdivision" to mean entities that are either "(1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." 402 U.S. at 605, 91 S.Ct. at 1749. Lower courts have applied the two criteria set forth in *Hawkins County* in cases under both the NLRA and the FLSA. *See, e.g., Powell v. Tucson Air Museum,* 771 F.2d 1309 (9th Cir.1985) (In FLSA action in which court had to analyze the meaning of "public agency" as defined in

§ 203(x) of the Act, court applied two criteria: (1) whether the entity was directly responsible to public officials or the general public; and (2) whether the parties' contract designated them as independent contractors, and not as state agencies.); *Skills Development Services, Inc. v. Donovan*, 728 F.2d 294 (6th Cir.1984) (Private corporation brought declaratory judgment action seeking determination that it was a "state agency" or "political subdivision" and thus that the FLSA could not be applied to it without violating the tenth amendment. Court borrowed NLRA analysis and applied *Hawkins County* criteria, to determine that corporation was not a "political subdivision." One factor taken into account by the court was the fact that the terms of the contractual relationship between the plaintiff corporation and the state showed that the parties themselves did not intend the corporation to be considered a state agency.); *Williams v. Eastside Mental Health Center*, 669 F.2d 671 (11th Cir.), *cert. denied*, 459 U.S. 976, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982) (In FLSA action for overtime compensation, court borrows from principles established in NLRA cases, and applies *Hawkins County* criteria to determine whether defendant is a "political subdivision." In concluding that defendant is not a "political subdivision", and thus not entitled to exemption from FLSA, court notes that "[w]hatever may have been the state's reason for [setting up defendant as an independent nonprofit corporation], it must live with the consequences. It cannot claim an immunity based on a condition which it itself sought to avoid." 669 F.2d at 678.)

In applying the *Hawkins County* criteria to defendant corporations, it is clear that criterion one is inapplicable: the parties do not dispute the fact that defendant corporations were initially privately incorporated, and were not created by the County.

The second test for determining whether an entity is a "political subdivision" under *Hawkins County* is whether it is administered by individuals who are responsible to public officials or to the general electorate.

Defendant corporations are controlled by their respective boards of directors, and plaintiffs assert that none of the boards is under "public control."

Defendants concede that because of the manner in which the directors are selected and removed in most of the corporations, those corporations are not under public control. (*See, e.g.,* Defendants' Reply to Plaintiffs' Motion, at p. 11, Paper # 37.) However, defendants contend that the boards of three of the corporations, (Bethesda Fire Department, Inc.; Chevy Chase Fire Department, Inc.; and Takoma Park Volunteer Fire Department, Inc.), are under public control because some of their members are selected by the public, and thus that these three corporations satisfy the second *Hawkins County* criterion. Defendants argue that if the court applies the *Hawkins County* criteria, then at least these three corporations should be held exempt under § 207(k) of the Act.

The court finds that the record does not support defendants' contention. The majority of the members of these boards are not selected by governmental officials or by the general electorate, and therefore, the decision-making authority of the corporations is not under public control. The Bethesda Fire Department's board of directors is composed of twenty-eight principle delegates selected by private citizens associations, three delegates from town communities, and three delegates from a chamber-of-commerce located in the area. (*See* Exhibit # 21, Constitution and By-Laws of Bethesda Fire Department, Plaintiffs' Paper # 31.) Thus, only three members are appointed by the government (local towns), and the majority is not elected by the "general electorate."

The Takoma Park Fire Department is managed by a ten-member board of directors, with the majority of its members (seven), elected by, and subject to removal by, the voting members of the corporation. With only three members of the board being governmental, (members of the Takoma Park City government), the court does not agree that the corporation is "administered by individuals who are responsible to

public officials." (*See* Exhibit # 43, Takoma Park Fire Department By-Laws, at pp. 9 & 12, Plaintiffs' Paper # 31.)

Finally, the Chevy Chase Fire Department is managed by a board of directors whose members are selected by citizens committees. The citizens committees consist of private residential property owners in special districts within the area served by the corporation, and do not consist of the general electorate. (*See* Exhibit # 26, Certificate of Incorporation; and Exhibit # 27, Constitution and By-Laws of the Chevy Chase Fire Department.)

Therefore, applying the *Hawkins County* criteria to the defendant corporations, the court concludes that the corporations are not political subdivisions.

### (2). *Congressional Intent*

The second factor the court has considered in the instant case is the overall congressional intent in enacting the FLSA. As the Supreme Court has made clear, courts should interpret coverage under the FLSA liberally, "to apply to the furthest reaches consistent with congressional direction", while they should construe exemptions from coverage very narrowly. *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296, 105 S.Ct. 1953, 1959, 85 L.Ed.2d 278 (1985); *Powell v. United States Cartridge Co.*, 339 U.S. 497, 516–517, 70 S.Ct. 755, 765–66, 94 L.Ed. 1017 (1950).

### (3). *Montgomery County*

■ Finally, and of great importance to the court, is the position that Montgomery County has taken on the issue of whether the firefighters are to be considered County employees. The legislative history of the various bills proposed by the Montgomery County Council to deal with fire and rescue services clearly reveals that the defendant corporations have been regarded by the County as independent corporations, not as agencies of the County, and that the employee-firefighters have been considered private, not County, employees. (*See* description of the legislative history of the relevant bills at pages 21–24 of Plaintiffs' Paper # 31, and the summary at pages 2–5, *supra,* of this opinion.) The court cannot imagine a clearer indication that the employees of the defendant corporations were not, and are not, considered governmental employees, in spite of the numerous connections they have with the County.

Further, the language of the Montgomery County Code clearly states that the firefighters are not to be considered County employees.

> **(g) Limitations.** *Nothing in this subtitle shall be construed to mean that any employees of the local corporations are county employees either on a de jure or de facto basis nor that the county government or any representative of the county government shall have authority over: (1) Who is employed; (2) who is terminated; (3) duty assignments; and (4) day-to-day supervision. Further, this chapter shall be construed to effectuate its intent that career personnel employed by local corporations and paid with tax funds are not county employees and that the local corporations shall remain autonomous and independent corporate entities.* (Emphasis added.)

(Montgomery County Code, Ch. 21, Fire and Rescue Services, § 21–4M, subsec. (g). Exhibit # 1 to Plaintiffs' Paper # 31.) Again, the court cannot imagine how the County could have made its intentions any clearer.

The defendants argue that by making these statements, the County should not be treated as having "waived" its right to claim the § 207(k) exemption. The court is not holding that the County has "waived" any rights, or that the County's intention necessarily governs. However, the County's previous position on the matter is certainly very significant. For what ever reasons it had, the County decided to permit the private corporations to continue to deliver fire protection services. There is evidence in the record that the County has benefitted from such an arrangement, and now it must also bear the burdens of that decision as well. If the County wishes the plaintiffs to be county employees, it cer-

tainly appears to be within its power to make them so, but the County simply has not done so.

The court has not attempted to find meaning in ambiguous language of a Code or in some unclear legislative history. Rather, the court has before it a very clear record that the issue of whether the firefighters are County employees has been explicitly addressed and resolved by the Council and citizens of Montgomery County. The court believes that their decision is entitled to considerable weight and respect.

Looking at all of these factors, the court concludes that the defendant corporations cannot be considered "public agencies", as the term is used in § 207(k) of the FLSA, and therefore that the § 207(k) exemption does not apply to them.

As a final argument, defendants claim that even if the court finds that they are not entitled to the § 207(k) exemption, their liability for backpay does not begin until after April 15, 1986. Defendants base this claim on the decisions in *Usery* and *Garcia, supra,* arguing that prior to the Supreme Court's decision in *Garcia,* they were totally exempt from FLSA coverage because they engaged in the "traditional governmental function" of fire prevention as defined in *Usery.*

The court does not agree with defendants' analysis. Defendants are correct in pointing out that *Garcia* is not to be applied retroactively, and that governments which relied on *Usery* are not now liable for backpay occurring before *Usery* was overturned by *Garcia. See* 1985 FLSA Amendments, Pub.L. 99–150, § 2(c) (Exhibit A, Plaintiffs' Paper # 41). However, the court does not find that *Garcia* or *Usery* apply to the instant case in the first place. *Usery* did not hold that all firefighters were exempt from FLSA coverage. Rather, it held that the FLSA could not be applied to certain state and local *government* employees, including state and local firefighters. Thus, *Usery* does not even apply unless the employees in question are government employees. In the instant case, this court has determined that plaintiffs are not County employees, or employ-

ees of a "public agency" or "political subdivision." Therefore, neither *Usery* or *Garcia* apply, and the 1985 FLSA Amendments do not insulate the defendant corporations from backpay liability prior to April 15, 1986.

### III. CONCLUSIONS

For the reasons set forth above, the court concludes that the plaintiffs in this action are covered by § 207(a) of the FLSA. The court further concludes that the defendants are not public agencies entitled to take advantage of the § 207(k) exemption to overtime payment, and thus that defendants have violated § 207(a) of the FLSA by failing to pay plaintiffs overtime compensation in accordance with that section. The court also finds that Montgomery County is not an indispensable party in this action. The court will grant plaintiff's motion for partial summary judgment on the issue of liability, and will provide the parties a period of time to attempt to negotiate the appropriate relief. The court will establish a date for a conference, at which time the parties will inform the court of the status of the case, and, if necessary, will establish an appropriate scheduling order, and trial date.

Therefore, it is this 30th day of July, 1987, by the United States District Court for the District of Maryland,

ORDERED:

(1) that plaintiff's motion for partial summary judgment on the issue of liability be, and the same hereby is, GRANTED;

(2) that defendants' motion for partial summary judgment be, and the same hereby is, DENIED;

(3) that defendants' motions to dismiss be, and the same hereby are, DENIED.