**J.T. KNIGHT, Barry Pack, Terry Duty and Louis Smith, Plaintiffs,**

v.

**William L. MORRIS, Defendant.**

**Civ. A. No. 87–0033–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

Aug. 16, 1988.

David C. Dickey, Stanardsville, Va., for plaintiffs.

Roger C. Wiley, Charlottesville, Va., for Morris.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This action is before the court under the Fair Labor Standards Act (FLSA). Defendant has now moved for summary judgment on the entirety of the claim brought by plaintiff Pack, and partial summary judgment against the claims of plaintiffs Knight, Duty, and Smith. For the reasons stated below, the motion of the defendant is granted.

### I. *Background*

The plaintiffs are all former Greene County deputy sheriffs and are suing to collect what they allege are unpaid overtime wages. Plaintiff Barry Pack worked as a deputy sheriff from October 1, 1984, until December 7, 1985. Plaintiff Terry Duty began working as a part-time deputy sheriff on September 1, 1984, moved to full-time service on July 1, 1985, and worked as a full-time deputy until June 1, 1987. Plaintiff Louis Smith began working as a deputy sheriff on December 1, 1984, and continued in that capacity until Febru-

ary 28, 1987. Plaintiff J.T. Knight began working as a deputy sheriff for Greene County, although not under Sheriff Morris, on January 1, 1984, and continued as a deputy until August 1, 1986. (Complaint p. 3). The plaintiffs claim that there has been no overtime paid since July 1, 1985, and that they are entitled to be compensated for their overtime hours at a rate of one and one-half times their normal rate of pay.

## II. *The Reach of the FLSA*

■ The applicability of the Fair Labor Standards Act has been the subject of two recent and far-reaching United States Supreme Court Decisions. In 1976, in *National League of Cities v. Usery,* the Supreme Court held that the 1974 amendments to the FLSA were impermissible infringements upon traditional state spheres of activity, thus limiting the reach of the FLSA. 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Nine years later, in *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the court reversed itself and found that state agencies are indeed subject to the mandates of the FLSA.[1] *Garcia* clearly forces state and municipal agencies to abide by the wage and hour restrictions embodied in the FLSA. The crux of this motion for summary judgment is a dispute about when the FLSA must be applied to state and municipal agencies. That is, when did the regime envisioned by *Garcia* become effective upon the states? The effective date will determine the time from which overtime pay must be calculated.[2]

Shortly after the *Garcia* decision, Congress passed the FLSA amendments of 1985. Act of November 13, 1985, PUB.L. No. 99–150, 1985 U.S.Code Cong. & Admin. News (99 Stat. 787). Seemingly, one effect of these amendments is to give states and municipalities a year's moratorium or breathing space until *Garcia*-mandated compliance with FLSA is required. Section 2(c)(1) of the 1985 amendments states that

No State, political subdivision of a State or interstate department agency shall be liable under § 16 of the Fair Labor Standards Act of 1938 for violation of § 6 (in the case of a territory or possession of the United States), 7, or 11(c) (as it relates to § 7) of such Act occurring before April 15, 1986, with respect to any employee of the State, political subdivision, or agency who would not have been covered by such Act under the Secretary of Labor's special enforcement policy on January 1, 1985, and published in §§ 775.2 and 775.4 of Title 29 of the Code of Federal Regulations.

99 Stat. 788–89.

In advancing this motion for summary judgment, defendant argues that the moratorium language in P.L. 99–150 relieves him of responsibility for overtime compensation until April 15, 1986. Plaintiffs are forced to argue that, in effect, this statutory language does not mean what it seems to say.

Retroactivity can be a slippery concept and a doctrine that courts may be loathe to apply unless certain tests are met. *Chevron Oil v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). While the question of retroactivity in this case is raised by the

---

**1.** *National League of Cities* met with considerable academic disdain. See, e.g., Barger, *National League of Cities v. Usery: New Meaning for the Tenth Amendment,* 1976 Sp.Ct.Rev. 161; Alfange, *Congressional Regulation of the "States Qua States": From National League of Cities to EEOC v. Wyoming,* 1983 Sp.Ct.Rev. 215. However, there is some regret expressed in the literature about the Supreme Court's abrupt "aboutface" in *Garcia.* E.g., Howard, *Garcia and the Value of Federalism: On the Need for A Recurrence to Fundamental Principles,* 19 Ga.L.Rev. 789 (1985). While there are jurisprudential and conceptual difficulties with Professor Howard's classification of institutional rights as a species

of individual rights, *id.* at 795, his analysis of *Garcia* does identify the concerns about federalism and the tenth amendment which *Garcia* raises. As Professor Howard concludes, "Because federalism is an intrinsic component of the constitutional system ... safeguarding that process cannot be left to the political branches." Id. at 797.

**2.** It is important to remember that *Garcia* itself created no rights *per se,* but simply extended the scope of previously created legislative rights. *Kartevold v. Spokane County Fire Protection,* 625 F.Supp. 1553, 1562 (E.D.Wash.1986).

decision of *Garcia*, it is not the retroactivity of the *Garcia* decision itself which is at issue. Indeed, the circuit court which dealt with *Garcia* originally and which reheard the decision on remand, found that the Supreme Court did not intend for the *Garcia* decision itself to be applied retroactively. *Garcia v. San Antonio Metropolitan Transit Authority*, 838 F.2d 1411, 1420 (5th Cir.1988). Reading the Supreme Court's *Garcia* decision as non-retroactive merely means that no state or county or municipality would be penalized for having previously attempted to follow faithfully the *National League of Cities* decision.[3] Litigants who have attempted to rely on *Garcia* as establishing a retroactive regime have also failed to meet with success in the Sixth Circuit. *Thurman v. City of Union City, Tenn.*, 628 F.Supp. 146 (W.D.Tenn. 1986). There, the plaintiff attempted to claim overtime eligibility solely on the basis of the retroactive application of *Garcia* itself without reference to the 1985 amendments. *Id.* at 148.

The non-retroactivity of *Garcia* itself is not dispositive, because the issue presented in this case is whether or not the 1985 FLSA amendments are retroactively efficacious. The question of whether the 1985 amendments can be applied retroactively is one upon which the Fourth Circuit has not yet passed. However, district courts in several other circuits have faced the issue and have all found that the retroactivity of the 1985 amendments presents no constitutional problems. The specific factual situations which these district courts faced are not, in all cases, identical with that presented by the instant case. However, these courts analyzed the import of the 1985 amendments in a way which clearly supports the defendant's motion for summary judgment.

The earliest case litigating the 1985 amendments was *Kartevold v. Spokane County Fire Protection*, 625 F.Supp. 1553 (E.D.Wash.1986) In that case, plaintiffs,

fire fighters in Spokane, attempted to litigate an overtime claim before the 1985 amendments became effective on April 15, 1986. A district court in the Eastern District of Washington found that those amendments were indeed retroactive and permissibly so. After examining the legislative history the court concluded "that Congress intended to declare a moratorium and thereby forestall the economic impact of *Garcia* is manifest." 625 F.Supp. at 1562.

*Kartevold*'s reliance on the legislative history of the 1985 amendments is well-placed. The Senate report on the bill clearly identified an intention to provide some sort of lead-time or period of adjustment for the states and localities so that they could restructure their financial arrangements in accordance with the demands of *Garcia*. S.Rep. No. 159, 99th Cong., 1st Sess., reprinted in 1985 U.S.Code Cong. & Administrative News, 651, 655–56. Likewise, a Joint Explanatory Statement of the Committee of Conference, included in the House Conference Report to the bill, concluded "State and local government employers are in no way obligated to comply with the Act's overtime provisions prior to April 15, 1986." H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess., reprinted in *Id.* at 670. The language of the 1985 amendments plainly indicates that Congress intended to defer the impact of *Garcia* for one year in order to give the states time to adjust. The legislative history fully supports this facial reading of the 1985 Amendments.

A District Court in the Southern District of Texas rejected the claim of deputy sheriffs seeking overtime compensation because the court could find no constitutional infirmity in the moratorium which the 1985 amendments granted. *O'Quinn v. Chambers County, Texas*, 636 F.Supp. 1388 (S.D. Tex.1986). That court found that Congress had acted perfectly rationally in deciding to

---

**3.** See also, *Conway v. Takoma Park Volunteer Fire Dept., Inc.*, 666 F.Supp. 786 (D.Md.1987). In dicta, the District Court noted "that *Garcia* is not to be applied retroactively, and that governments which relied on *Usery* are not now liable

for backpay occurring before *Usery* was overturned by *Garcia*." *Id.* at 796, appeal dismissed, 838 F.2d 465, (4th Cir.1988) (citations omitted).

create a moratorium for the imposition of liability on state and municipal governments and, because such a creation was rational, the plaintiffs were not in any way deprived of due process. *Id.* at 1390. Interestingly enough, the court in *O'Quinn* concluded that the Supreme Court's *Garcia* decision itself anticipated, or at least contemplated, the possibility of something like the 1985 amendments. The court stated that

> *Garcia* arguably contemplates action such as Congress took. While holding that Congressional power under the Commerce clause is not limited by federal respect for state activity in areas of 'traditional government functions' the *Garcia* court reasoned that such a limitation is not necessary because states participate in the federal government.

*Id.* at 1391, n. 3.

A district court in the Second Circuit has also found that the Congressional intent in enacting Public Law 99–150 was to create some retroactive protection for the states. *Wong v. The City of New York Human Resources Admin.*, 641 F.Supp. 588 (S.D. N.Y.1986). This case involved a question of whether working as a house-parent in a group home counted as a "non-traditional activity" for the classification purposes in the FLSA. *Id.* at 588. However, that court undertook to examine, as it should have done, the retroactivity of the 1985 FLSA amendments and took note of the moratorium period provided by the amendments. Id. at 590.

Finally, the Seventh Circuit has had occasion to examine the 1985 amendments and they have also found them to be permissibly retroactive. In *Rhinebarger v. Orr*, a district court in Indiana rejected the claims of state police officers seeking overtime compensation. 657 F.Supp. 1113 (S.D.Ind. 1987). That decision was affirmed on appeal in an identically-styled case. 839 F.2d 387 (7th Cir.1988). In *Rhinebarger* II, the Seventh Circuit held that, "[F]ollowing the precedent of the Supreme Court, we conclude that the 1985 FLSA amendment is constitutional because it enacts a rational legislative purpose in a manner that is nei-

ther harsh nor oppressive." *Id.* at 388, (citing *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984)). In addition, the court characterized the intent of the amendments in this way, "Consequently, Congress provided a grace period for the states and local governments in which measures could be taken to enforce the inactive FLSA without jeopardizing their economic viability." *Id.* at 390. Furthermore, the court went on to find that "Congress enacted the 1985 FLSA Amendment, knowing full well that it would prevent some state employees from receiving overtime compensation for a short period of time, in order to allow the states to maintain fiscal stability." *Id.*

It is undisputed that this court lacks recourse to a binding precedent from the Fourth Circuit which would instruct us how to interpret the 1985 FLSA amendments. However, we have the plain, unambiguous language of the amendment, the strongly supportive and unequivocal legislative history behind those amendments, and the chorus of interpretation from sister district courts in several circuits which all read the FLSA amendment of 1985 to be retroactive in creating a moratorium of liability for state and municipal institutions, such moratorium to last until April 15, 1986.

### III. *Plaintiffs' Expectations and Reliance*

█ Plaintiffs argue that because they were paid overtime prior to July, 1985, and because, they allege, they were promised overtime, their reliance on that imputed promise obligates defendant to compensate them for overtime up through April 15, 1986, at the rate of one and one-half times their hourly rate of pay, regardless of what the Federal statutes may require. Several problems debilitate this argument. First, it is not at all clear what the plaintiffs' actual expectations were in regard to overtime pay. While overtime was paid from April 15, 1985, until June, 1985, three of the plaintiffs testified that at the time they were hired they understood that while they would be working for long hours, they would not receive any overtime pay. Depo-

sitions of plaintiff Pack, p. 4, plaintiff Duty, p. 34, plaintiff Knight, p. 56. Furthermore, while defendant Morris continued to submit C.B. Form 21, "Request for Payment of Overtime Costs," he submitted this form in the face of knowledge that county administrators were not signing the requests and he continued to submit it long after it became apparent that overtime payments would not be forthcoming. While defendant admits submitting these forms, deposition of defendant Morris, pp. 73–74, the defendant recognized that they were not signed by the County Administrator, *Id.* at p. 79, and he admits that he does not know if the county forwarded these overtime requests to the State Compensation Board or not. *Id.* at p. 195. The defendant also admits that he continued to submit the overtime requests even though he was not sure whether the overtime was compensable or not. *Id.* at p. 93. This pattern of fruitless submission undercuts the reasonableness of the plaintiffs' alleged reliance on defendant Morris' actions. The plaintiffs' own testimony about their initial understandings at the time of their hiring also undercuts their argument on reliance.

In advancing their claim of reliance, plaintiffs have failed to go beyond the allegations contained in their pleadings and, thus, that claim is insufficient to resist the defendant's motion for summary judgment. Fed.R.Civ.P. 56(e). The plaintiffs have failed to indicate that there is a genuine issue of material fact, other than by mere reiteration of the substance of their complaint. Id. 56(c) In order to survive the motion for summary judgment by use of their reliance claim, plaintiffs must produce "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986) (citing Fed.R.Civ.P. 56(e)) (emphasis in original). Clearly, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. The plaintiffs would have had to present "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This they have not done.

IV. *Disposition of Plaintiffs' Claims*

The court finds that the 1985 amendments to FLSA created a moratorium whereby states and municipalities were immune from the provisions of the FLSA until April 15, 1986. The court draws attention to the legislative history and the case law noted *supra* which supports this interpretation. The court further finds that the plaintiffs have failed to advance an argument based on reliance which would support their contention that they are entitled to overtime compensation on that basis. Therefore, the court will grant defendant's motion for summary judgment in the following manner:

A. Plaintiff Pack's Claim

The claim advanced by plaintiff Pack is dismissed in its entirety. Since neither the Commonwealth of Virginia nor the county could be construed as being required to pay overtime compensation before April 15, 1986, as a matter of law, plaintiff Pack has no basis on which to advance a claim for overtime compensation, his service as a deputy having cased on December 7, 1985. The motion is therefore granted as to the claims asserted by Pack.

B. The Claims of the Remaining Plaintiffs

Defendant is made liable under the rubric of *Garcia* for overtime compensation to deputy sheriffs. However, as has been argued *supra,* that liability for overtime compensation did not ripen until April 15, 1986. Therefore, this court grants the motion as to the portions of the remaining plaintiffs' claims for overtime compensation prior to April 15, 1986. This court finds that these remaining plaintiffs might construct a valid claim for overtime compensation for the period beginning April 15, 1986.

C. Fixing the Rate for Overtime Compensation

■ Two sections in the Code of Federal Regulations govern the computation of

overtime hours and the calculation of the rate at which overtime shall be paid for employees in the same position as these plaintiffs. Because plaintiffs worked in the area of law enforcement, they are due overtime compensation for all hours worked in excess of 171 hours per work period (28 consecutive days). 29 C.F.R. § 553.230(b) (1987). The plaintiffs all testified that, at their hiring, they understood that their salary represented their total straight-time salary, regardless of the hours they were required to work in a given period. Depositions of plaintiff Pack at pp. 6–7; Duty at p. 34; Smith at p 47; Knight at p. 57. Therefore, because plaintiffs are considered "fixed salary" employees, they will receive overtime compensation at the rate of one-half times their regular rate of pay, not at the rate of one and one-half times their regular rate of pay. 29 C.F.R. § 778.114 (1987).[4]

Ostensibly, there is a facial conflict between 29 C.F.R. §§ 553.232 and 778.114. Section 553.232 provides, in the relevant portion, "If a public agency pays employees subject to section 7(k) for overtime hours worked in cash wages rather than compensatory time off, such wages must be paid at one and one-half times the employees' regular rate of pay," while § 778.114(a) requires compensation for overtime hours at one-half the employees's regular rate. The reason that these sections do not, in point of fact, conflict in this particular instance lies in the plaintiffs' status as straight time or salaried employees. Section 778.114(a) is addressed to "An employee employed on a salary basis [who] may have hours of work which fluctuate from week to week and [whose] salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many." 29 C.F.R. § 778.114(a).

As employees on a fixed salary, plaintiffs have, in effect, already been "paid" at their regular rate for whatever overtime hours they may have worked. Employees in such a posture contract to work the hours required in return for their set salary. Therefore, in order for employees like the plaintiffs to be compensated at one and one-half times their regular rate of pay for overtime hours, they should receive, in addition to their straight salary, overtime compensation at the rate of one-half times their regular rate of pay. A law enforcement officer on a straight salary who works overtime hours and receives one-half times his regular salary for those overtime hours has received effective "time and a half" for his overtime hours.[5]

Plaintiffs are on a fixed salary but work a fluctuating number of hours per work period. Therefore, since their regular rate of pay must be determined by dividing the total number of hours worked in a work period into the amount of salary for that period, in assessing the overtime compensation rate for each plaintiff, the regular rate of pay would have to be recalculated for each work period. 29 C.F.R. § 778.114 (1987).

## V. Conclusion

This court finds that plaintiff Pack is not entitled to any overtime compensation from the defendant and therefore grants the motion for summary judgment against his claim. The court finds that the other plain-

---

**4.** See *Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135, 1138–39 (5th Cir.1988), (interpreting § 778.114(a) and using one-half regular rate as the basis for overtime compensation); *LaForte v. Horner,* 833 F.2d 977 (Fed.Cir.1987) (claims for overtime compensation by firemen limited to one-half regular rate).

**5.** Thus, a district court in Pennsylvania, in considering the overtime claims of federal firefighters and law enforcement personnel, explained "This portion of the F.P.M [Federal Personnel Manual] Letter also explains why law enforce-

ment personnel and firefighters are paid one-half their regular rate for scheduled overtime hours rather than the traditional one and one-half: these employees have already been compensated for all hours worked and therefore, the additional one-half times their regular rate for each hour worked over the FLSA maximum results in the employee being paid at a rate of one and one-half for each hour of his scheduled overtime." *Zumerling v. Marsh,* 591 F.Supp. 537, 548 (W.D.PA.1984), *affirmed sub nom., Zumerling v. Devine,* 769 F.2d 745 (Fed.Cir.1985).

tiffs would be entitled to overtime compensation only for the time period beginning April 15, 1986 and grants the motion for partial summary judgment against their claims. Furthermore, the court finds that these plaintiffs are entitled to be compensated for any hours worked in a given work period (28 consecutive days) over the total of 171 hours, and to be compensated for those hours over 171 at the rate of one-half times their basic pay rate, to the extent that they are able to prove such overtime claims.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

that defendant's motion for summary judgment and for partial summary judgment shall be, and it hereby is, granted as follows:

1. Summary judgment is granted against plaintiff Pack's claim in its entirety.

2. Partial summary judgment is granted against the portions of the claims of plaintiffs Knight, Duty, and Smith for the period prior to April 15, 1986.

3. All valid plaintiffs' claims shall be computed at the rate of ½ times their base salary for the time over 171 hours per work period.

The clerk is hereby directed to send a certified copy of this Order, and the accompanying Memorandum Opinion, to all counsel of record.