**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DOUGLAS E. MAYHEW,
Plaintiff-Appellant,

v.                                                                                    No. 96-1175

CARL H. WELLS, Sheriff,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-94-570-R)

Argued: March 3, 1997

Decided: September 10, 1997

Before MURNAGHAN and ERVIN, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Ervin wrote the opinion, in
which Judge Murnaghan and Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Terry N. Grimes, KING, FULGHUM, SNEAD, NIXON
& GRIMES, P.C., Roanoke, Virginia, for Appellant. Walter Wayne
Heslep, HESLEP, NATKIN & KEARNEY, P.C., Lexington, Vir-
ginia, for Appellee.

_____

**OPINION**

ERVIN, Circuit Judge:

Plaintiff-Appellant Douglas E. Mayhew appeals from a judgment below awarding him compensatory damages under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., unsatisfied with the method employed in calculating those compensatory damages and with the denial of double, liquidated damages. We affirm the judgment below in its entirety.

I.

Mayhew is a former deputy sheriff of the Bedford County, Virginia, Sheriff's Department. Defendant-Appellee Charles H. Wells was the Sheriff of Bedford County during the relevant time. Mayhew worked full-time as a Drug Abuse Resistance Education (D.A.R.E.) officer from 1978 to November 1993, and thereafter, until January 1995, as a correctional officer. In addition, Mayhew owned a dog that was used sporadically as the Sheriff's Department's tracking dog. This dispute concerns the appropriate level of overtime compensation due Mayhew for the care of his dog.

Mayhew's brother owned a tracking dog whose use he volunteered to the Department. When his brother became ill in May 1985, the dog was given to Mayhew who agreed to the continued use of the dog by the Department. Mayhew agreed to care for, train, and utilize the dog, and, in exchange, Wells agreed that the Department would pay for food, veterinary care, and any tracking/training tools. Mayhew did not mention any other compensation at that time.

In 1986, Mayhew replaced the first dog, which became ill, with another dog, and Mayhew and Wells agreed to this substitution under the same terms as previously negotiated. Again, there was no discussion of compensation for the time Mayhew spent caring for and training this dog. Mayhew would later testify that he spent approximately 14 hours per week on these activities, but there was no evidence that this time was spent at the direction of Wells. When Mayhew was reassigned from D.A.R.E. to a correctional position in November

2

1993, he unilaterally decided to stop using the dog for tracking purposes.

Mayhew filed suit on July 18, 1994, seeking overtime compensation for the time spent caring for and training his dog pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. The district court granted Mayhew summary judgment on the issue of liability after Wells failed to timely present his opposition. A one-day bench trial was held on November 20, 1995, on the issue of damages. In a memorandum opinion filed January 20, 1996, the district court awarded Mayhew $5299 in compensatory damages for unpaid overtime compensation. The court determined that Mayhew was normally compensated by a salary that was fixed for fluctuating hours, and thus, pursuant to 29 C.F.R. § 778.114, Mayhew's overtime was to be compensated at one-half of his regular pay rate. The district court also denied Mayhew liquidated damages pursuant to 29 U.S.C. § 260, finding that Wells possessed several reasonable grounds to believe his actions did not violate FLSA.

Mayhew appeals the damages award, claiming both that he should have been compensated at one and one-half times his regular rate of pay, not one-half, and that he should have been awarded liquidated damages that would, in effect, double his award.

II.

Mayhew instituted the present action pursuant to FLSA, 29 U.S.C. § 216(b), which grants federal jurisdiction. See also 28 U.S.C. § 1331. This appeal arises from a final decision below, and thus we possess appellate jurisdiction under 28 U.S.C. § 1291.

We review "the district court's legal conclusions de novo and its factual findings for clear error." Waters v. Gaston County, N.C., 57 F.3d 422, 425 (4th Cir. 1995). The district court's denial of liquidated damages under FLSA, 29 U.S.C. § 260, is reviewed for abuse of discretion. See Burnley v. Short, 730 F.2d 136, 140 (4th Cir. 1984).

III.

The parties expend considerable time characterizing certain evidence in light of three dog-care cases that each held that the off-duty

3

care of canine unit dogs was compensable under FLSA. See Truslow v. Spotsylvania County Sheriff, 783 F. Supp. 274, 279 (E.D. Va. 1992); Nichols v. City of Chicago, 789 F. Supp. 1438, 1442-43 (N.D. Ill. 1992) (relying on and finding the Truslow court's analysis "highly persuasive"); Levering v. District of Columbia, 869 F. Supp. 24, 27 (D.D.C. 1994) (agreeing with Truslow). That emphasis is misplaced, however, for Wells has not appealed his liability, and that issue is not before us. Instead, we need only contend with the very narrow issues of whether the district court applied the proper rate for determining Mayhew's overtime compensation and whether the district court abused its discretion in denying Mayhew liquidated damages.

A.

The district court relied on 29 C.F.R. § 778.114, as interpreted by the district court in Knight v. Morris, 693 F. Supp. 439, 445 (W.D. Va. 1988), in determining that Mayhew should be compensated for his overtime with the dog at a rate of one-half his regular pay rate. That section of part 778, which constitutes an official interpretation by the Department of Labor but not a formally promulgated regulation, provides in part:

> (a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those work-weeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. . . . Payment for overtime

4

> hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

29 C.F.R. § 778.114(a). The district court in Knight found that the deputy sheriffs of Greene County, Virginia, were on a fixed salary but worked a fluctuating number of hours per work period and that there-fore their overtime should be compensated at a rate one-half their reg-ular pay rate. Knight, 693 F. Supp. at 445. The court explained that the deputies had already been "paid," in part, for their overtime hours by their fixed salary and that, by receiving an additional one-half their regular pay rate for the overtime hours, they would effectively receive "time and a half" for overtime hours. Id.

The court below equated Mayhew's situation as a deputy sheriff with that of the deputies in Knight. Mayhew v. Wells, No. CA-94-570-R, slip op. at 7 (W.D. Va. Jan. 10, 1996). Whether this be a factual or legal conclusion, even a more penetrating de novo review by us fully supports this conclusion. The Department's payroll clerk pro-vided unchallenged testimony that Mayhew was a salaried employee whose annual salary was set by the Compensation Board of the Com-monwealth of Virginia. Deputies were expected to work 160 hours in each 28-day cycle but were paid their fixed salary whether they worked more or fewer hours. This testimony was exactly corroborated by Wells. Mayhew himself admitted that he was a salaried employee, and testified that he was neither "docked" for running personal errands during the work day nor paid more when he frequently worked ten extra hours a week.

Although the district court properly determined that Mayhew was employed on a fixed salary for fluctuating hours, that does not end our inquiry into whether Mayhew should be additionally compensated for overtime at a one-half rate. Since the time of the district court's opinion, we have twice had occasion to interpret § 778.114. In both Bailey v. County of Georgetown, 94 F.3d 152, 156 (4th Cir. 1996), and Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1281 (4th Cir. 1996), we held that § 778.114 requires a "clear mutual under-standing" between employer and employee that the fixed salary is to be compensation for all straight time hours worked, whether few or

5

many. Without such a clear mutual understanding, the fluctuating work period method of "half time overtime" cannot be utilized. In Bailey, we further held that this understanding did not have to extend to the manner in which overtime pay itself would be calculated, since neither FLSA nor any regulation was to the contrary, and an employer need not secure written acknowledgements from employees indicating that the pay plan had been explained to them. Bailey, 94 F.3d at 156. In Monahan, although we ultimately determined that § 778.114 was inapplicable to the case at bar, we noted that the section places the burden on the employer to prove the "clear mutual understanding" since the section otherwise acts as an exemption to the strict overtime requirements of FLSA. Monahan, 95 F.3d at 1281. Nevertheless, the existence of such an understanding may be "based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise." Id. at 1281 n.21. What was dicta in Monahan, we now expressly hold.

There can be little doubt that Wells and Mayhew possessed a clear mutual understanding as to Mayhew's fixed salary. Mayhew's testimony demonstrates that he knew he would never be paid more than his fixed salary no matter how many hours he worked, nor would he be docked if he worked fewer than the expected 160 hours per work period. Because the fixed salary was set by the Compensation Board, which provided no additional funds for overtime pay, in no case was overtime ever paid in money. Instead, Wells's policy was to give one-for-one compensatory time off ("comp time"), i.e. one hour off for one extra hour of work, as soon as practical after the extra hours were worked. The goal of this comp time policy was to keep actual hours worked around 160 per work period. Only if total hours worked exceeded 171 in any given work period was comp time "paid" back at one and one-half hours for each hour above 171. Although Mayhew testified that he did not know whether the Compensation Board would pay overtime, he was absolutely sure that even if he worked 250 hours, 160 hours was what was "always turned into[sic] the Compensation Board." J.A. at 134. Wells has sustained his burden of demonstrating a clear mutual understanding with Mayhew that Mayhew would be compensated by a fixed salary for fluctuating hours worked.**1**

_____

**1** Mayhew's reliance on Roy v. County of Lexington, S.C., 928 F. Supp. 1406 (D.S.C. 1996), is totally misplaced. In the first place, the court in

6

See Monahan, 95 F.3d at 1281. Although the evidence is equivocal as to whether Mayhew fully understood the comp time arrangement, such an understanding is not necessary to the validity of the "half time overtime" scheme of § 778.114. See Bailey, 94 F.3d at 156.

A de novo review therefore fully supports the district court's decision to apply the "half time overtime" method permitted by § 778.114 in calculating Mayhew's overtime pay. We therefore affirm the district court's award of $5299 as compensatory damages.

B.

Turning to the issue of liquidated damages, FLSA plainly envisions that liquidated damages in an amount equal to the unpaid overtime compensation are the norm for violations of § 7 of the Act. 29 U.S.C. § 216(b). Only where "the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of FLSA may the court exercise its discretion to deny liquidated damages. Id. at§ 260; see also Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 357 (4th Cir. 1994); Burnley v. Short, 730 F.2d 136, 140 (4th Cir. 1984). We have previously interpreted the exemption entailed by § 260 to place a "plain and substantial burden" upon the employer to persuade the court that

_____

Roy determined that the employees there were on a fixed salary subject to a fluctuating workweek, id. at 1419 & n.23, which seriously undermines Mayhew's argument that he was not a salaried employee. But more importantly, the court refused to find there was a "clear mutual understanding," in part because the employer had issued a memorandum to its employees advising them that they would be paid overtime at one and one-half times their hourly rate (apparently by mistake, but a mistake that was never corrected) and, in part, because the court looked to authority requiring a document signed by the employees, absent there, to help demonstrate the mutual understanding, an approach repudiated in Bailey. Roy, 928 F. Supp. at 1420. Significantly, in light of Bailey, the Roy court has vacated that part of its opinion dealing with this issue and issued a new opinion in which it finds that the salary arrangement was, in fact, clear to the employees. See Roy v. County of Lexington, S.C., 948 F. Supp. 529, 531 (D.S.C. 1996).

7

the "failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." Brinkley-Obu, 36 F.3d at 357 (quoting Richard v. Marriott Corp., 549 F.2d 303, 306 (4th Cir.), cert. denied, 433 U.S. 915 (1977)) (internal quotation marks omitted). Despite certain language in Richard requiring the employer to establish both good faith and reasonableness, see also Burnley, 730 F.2d at 141-42 (Winter, C.J., concurring and dissenting) (noting that Fourth Circuit precedent establishes such a two-prong test to excuse liability from liquidated damages), we have previously found no abuse of discretion when the court below was convinced only of one prong. See, e.g., Brinkley-Obu, 36 F.3d at 357-58 (finding no abuse of discretion where the court below was satisfied as to the employer's good faith).

In the instant case, the district court stated in its opinion a number of the factors that established to its satisfaction that Wells had had reasonable grounds to believe he was not violating FLSA. See Mayhew, slip op. at 8-9. Although the district court did not explicitly address the good-faith prong of Wells's burden, we believe that the factors the district court did discuss, as well as other aspects of the record before both us and the court below, plainly establish Wells's objective good faith in failing to pay Mayhew for the overtime spent caring for the tracking dog. See Clifton D. Mayhew, Inc. v. Wirtz, 413 F.2d 658, 661-62 (4th Cir. 1969) (holding that the good-faith prong requires an objective, not subjective, good faith). [2]

Perhaps most probative of Wells's good faith and reasonableness is the fact that Mayhew individually owned the dog, unlike the law enforcement agency-owned dogs in every other dog-care case. Thus Mayhew would have had to spend the same amount of time feeding and caring for the dog whether it was used by the Department or not. Moreover, Mayhew owned a second dog, and much of the time spent caring for and feeding the tracking dog was simultaneously spent on this second dog. Therefore, even if Mayhew had not owned the tracking dog, Mayhew still would have spent this time with the second

_____

[2] Mayhew's exclusive reliance on case law from the District of Columbia Circuit, to the exclusion of our own relevant precedent, results in Mayhew misunderstanding the requirements to prevail before us.

8

dog. The district court also found probative of Wells's reasonableness the quid pro quo agreement by which the Department paid for the dog's food, veterinary care, and training tools in exchange for Mayhew's activities with the dog. See Mayhew, slip op. at 8. In other words, Wells could have reasonably believed that Mayhew was already being compensated for his dog-time. This evidence plainly supports the district court's conclusion that Wells possessed reasonable grounds to believe he was not violating FLSA. [3]

Not only do these factors establish Wells's objective good faith, but such a conclusion is bolstered by other testimony before the court below. Mayhew himself testified that he never approached Wells about receiving comp time for his overtime work with the dog, and that Wells gave him complete freedom to determine how much time to spend with the dog. Lt. Stephen Rush, Mayhew's immediate supervisor, testified that Mayhew consistently recorded his overtime when the dog was used for tracking purposes and that Mayhew received the appropriate comp time for those periods but that Mayhew never even claimed time for feeding and training the dog. And, finally, Wells testified that had Mayhew claimed the time for feeding and training from the outset, then he could have gotten appropriate comp time for it. This cumulative evidence objectively establishes that Wells acted in good faith when he failed to compensate Mayhew for the overtime spent caring for the dog since Mayhew received comp time for all overtime he did claim and never sought comp time for the time spent caring for the dog.

The evidence plainly demonstrates that the court below was satisfied as to Wells's good faith and reasonableness, [4] a conclusion fully

_____

[3] The district court also noted that Wells could have reasonably believed that Mayhew's care and training of the dog was not a "principal activity" of a D.A.R.E. officer within the meaning of 29 U.S.C. § 254. See Mayhew, slip op. at 8.

[4] Additional support for the view that the court below was satisfied as to Wells's good faith is found in its analysis of the statute of limitations issue, not on appeal here, in which it determined that Wells lacked the "willfulness" necessary to subject him to the three-year statute of limitations under 29 U.S.C. § 255(a). See Mayhew, slip op. at 4-6; cf. Brinkley-Obu, 36 F.3d at 357 (noting that a jury's finding of non-willful behavior on the statute of limitations issue can provide an objective basis to premise a finding of good faith on the liquidated damages issue (citing Fowler v. Land Management Groupe, Inc., 978 F.2d 158, 163 (4th Cir. 1992)).

9

supported by the record. Moreover, in the totality of these circum-
stances, it would be unfair to impose on Wells more than a compensa-
tory verdict. See Brinkley-Obu, 36 F.3d at 357. Because the district
court did not abuse its discretion in denying liquidated damages, see
id. (reviewing the district court's denial of liquidated damages for
abuse of discretion); Burnley, 730 F.2d at 140 (same), we therefore
affirm the judgment below.

IV.

The evidence demonstrates that Wells and Mayhew had a clear
mutual understanding that Mayhew was employed on a fixed salary
for fluctuating hours. Mayhew knew he would never be paid any dif-
ferent amount than his fixed salary no matter how many hours he
worked since the Department's policy was only to allow comp time.
Following our de novo review, we conclude that the district court
properly applied the "half time overtime" method permitted by 29
C.F.R. § 778.114 in calculating Mayhew's overtime pay.

Although an employer faces a substantial burden in avoiding liabil-
ity for liquidated damages under FLSA, the evidence in this case
establishes that the district court was satisfied that Wells acted in
good faith in not compensating Mayhew for the overtime with the dog
and with reasonable grounds for believing that not doing so was not
a violation of FLSA. Mayhew owned the dog; Mayhew was compen-
sated, in kind, with dog food, veterinary care, and supplies; Mayhew
received comp time for all overtime logged, including time spent uti-
lizing the dog on investigations; and Mayhew never asked Wells
whether he could be compensated for time spent caring for and feed-
ing the dog. The district court did not abuse its discretion in denying
liquidated damages.

We affirm the judgment below in its entirety.

AFFIRMED

10