# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3445

_____

|  |  |  |
|---|---|---|
| Anthony Lang; Mark Lane; | * | |
| Jim Love; Shaya Love; Bill Roberts; | * | |
| Phil Rosado; Jim Wisinski; | * | |
| Anthony Smith, | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | District Court for the District of |
| v. | * | Nebraska. |
| | * | |
| City of Omaha, Nebraska, | * | |
| A Municipal Corporation, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  April 23, 1999

Filed:  August 13, 1999
_____

Before BEAM and HANSEN, Circuit Judges, and MOODY,[1] District Judge.
_____

BEAM, Circuit Judge.

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas, sitting by designation.

City paramedics sued their employer under the Fair Labor Standards Act (FLSA) for allegedly due, yet unpaid, overtime compensation. The district court[2] found that the paramedics fell within the overtime exemption for firefighters and law enforcement personnel, and entered judgment for the city. We affirm.

## I. BACKGROUND

The City of Omaha (City) provides emergency medical service through its fire department. The plaintiffs in this case are former and current fire department paramedic employees. All paramedics employed by the City are first hired as firefighters. All firefighters receive the same basic training. This includes fire suppression, rescue, and extraction techniques. They also receive basic emergency medical (EMT) training. After the initial training, they are assigned to a fire engine for one to two years to work as firefighters before they are allowed to transfer to a rescue squad, or medical unit. In order to be a paramedic, an individual must have approximately nine additional months of extensive medical training over and above the basic EMT training received by all firefighters. Paramedics learn to handle severe trauma cases, cardiac problems, and to employ more sophisticated and invasive procedures to assess and stabilize a victim before and during transport to a hospital.

Medical units are based in fire stations. During the period in question, October 1994 to January 1996, medical units were dispatched to accident settings, traffic problems, crime scenes, in response to requests for emergency medical assistance, and to fire scenes where a working fire was reported. While at a fire, a paramedic's primary duty is the medical care of firefighters as well as civilians who may have been injured by the fire. Once the medical area is established just outside the fire perimeter, the paramedics essentially stand by, ready to treat an injury or exhaustion. The "Incident Commander" in charge of a fire scene is authorized to use the paramedics for other

[2]The Honorable William G. Cambridge, United States District Judge for the District of Nebraska

tasks if required. When responding to accident and medical calls, rescue squads are often accompanied by a fire engine. While together at an accident or medical scene, a paramedic's primary task is the treatment of a victim. It is the firefighters who secure the area, eliminate any actual or potential hazards and perform any actual rescue or extrication required (for example, insuring that a car will not catch on fire, and removing the victim from the wreckage). Paramedics are also dispatched with the police to auto accident and crime scenes.

In addition to the initial training, paramedics, when not out on calls, participate in firehouse "schools" where firefighting equipment or techniques are introduced or reviewed. They also receive frequent medical training and evaluation to maintain their ratings. Paramedics may also fill, or be called in to fill, a vacant position on a fire engine for a shift. Paramedics, like firefighters, work twenty-four hour shifts. A typical day begins with an inventory of equipment and inspection of the rescue squad. The remainder of the shift, aside from calls, is occupied with maintenance of the vehicle and equipment, training, shared housekeeping duties with firefighters, waiting for calls, and sleeping.

As a general rule, under the FSLA, employees are entitled to overtime pay in the form of one-and-one-half times their regular hourly rate for each hour worked over forty in a work week. See 29 U.S.C. § 207(a). However, Congress created an exemption for public employees engaged in fire protection or law enforcement activities. This exemption allows a public employer to schedule fire employees for up to 216 hours of work in a twenty-eight day period before becoming liable for overtime compensation (171 hours for law enforcement personnel). See id. § 207(k); 29 C.F.R. § 553.201. The plaintiffs brought this action claiming that, during the period in question, they were not engaged in "fire protection activities" for purposes of section 207(k) and were thus entitled to overtime payments for all hours worked over forty per week. After a bench trial, the district court, ruling from the bench, found that the

paramedics were engaged in fire protection activities and therefore exempt from the forty-hour rule.

## II.    DISCUSSION

The crux of the plaintiffs' argument is that they cannot be considered "engaged in fire protection activities" because most of the calls to which they respond are not fire-related, and when they are at a fire scene, their duties involve only medical care and not firefighting.  We review the factual findings of the district court for clear error, and conclusions of law de novo.  See Reich v. Stewart, 121 F.3d 400, 404 (8th Cir. 1997).

The statutory section creating the partial overtime exemption does not itself define what is meant by "employee in fire protection activities."  However, regulations promulgated by the Department of Labor provide some guidance.  The term includes:

> any employee (1) who is employed by an organized fire department or fire protection district;  (2) who has been trained to the extent required by State statute or local ordinance;  (3) who has the legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type;  and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental non-firefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills and inspecting homes and schools for fire hazards. . . .  The term would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities. See § 553.215.

29 C.F.R. § 553.210(a).  This regulation provides two ways an employee may be considered to be engaged in fire protection activities.  The first is the explicit four-part

test.  The second is the "integral part" inquiry.[3]  If the requirements of section

[3]The phrase "integral part" is not defined anywhere in the regulations.  There is, however, a reference to section 553.215.  This section provides in pertinent part:

> Ambulance and rescue service employees of a public agency other than a fire protection or law enforcement agency may be treated as employees engaged in fire protection or law enforcement activities of the type contemplated by sections 7(k) and 13(b)(20) if their services are substantially related to firefighting or law enforcement activities in that (1) the ambulance and rescue service employees have received training in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective, duties, and (2) the ambulance and rescue service employees are regularly dispatched to fires, crime scenes, riots, natural disasters and accidents.

29 C.F.R. § 553.215(a).

The obvious difficulty lies in the fact that section 553.215 applies to paramedics employed by a "public agency *other than* a fire protection or law enforcement agency," which would appear to leave no definition of "integral part" for paramedics employed by a fire department.  The plaintiffs attempt to create a question as to whether the section 553.215 test can be applied to them.  However, in Christian v. City of Gladstone, this court agreed with the reasoning in Alex v. City of Chicago, 29 F.3d 1235, 1241-42 (7th Cir. 1994), and held that section 553.215 can be applied to paramedics employed by fire departments. 108 F.3d 929, 932 n.2 (8th Cir. 1997).  To hold otherwise would subject paramedics to different standards for the exemption simply because emergency medical services are administered by a different agency, even though the employees' duties are exactly the same.  See Justice v. Metropolitan Gov't of Nashville, 4 F.3d 1387, 1395 (6th Cir. 1993) ("Congress did not intend for an organizational structure, rather than job function and duties, to decide the applicability of federal wage provisions.")

Either the four-part test of section 553.210 or the integral part test of 553.215 can be used to establish that employees fall within the exemption.  The district court found that the plaintiffs satisfied both the four-part test of section 553.210(a) and the

553.210(a) are satisfied, the second step in evaluating an employee's exempt status is a quantitative analysis under 29 C.F.R. § 553.212(a) (no more than twenty percent of employee's time may be spent in non-exempt activities).

Our analysis and application of the section 553.210(a) four-part test is governed by our recent case, Christian v. City of Gladstone, 108 F.3d 929 (8th Cir. 1997). As in this case, Christian involved trained firefighters who worked for a fire department as paramedics. They responded to fires, accident scenes, and crime scenes, though the majority of their calls were medical emergencies unrelated to fire or police calls. See id. at 931. We held that the paramedics in Christian satisfied the four-part test and were thus exempt from the forty-hour work week limitation.

There is no serious contention that the plaintiffs here do not meet the first three requirements. They are employed by an organized fire department, have received all training required by law to perform firefighting, and they are sworn and trained firefighters and thus have the legal authority and responsibility required by the third part of the test. See id. at 932.

The plaintiffs argue that the fourth element of the test is not satisfied because they do not perform "activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires." They attempt to distinguish their activities at fire scenes from those of the plaintiffs in Christian. In Christian, the paramedics would engage in fire suppression when they first arrived at a scene, but would then leave when they could in order to be available for other calls. See id. at

two-part test of 553.215(a), thus falling within the exemption no matter which test is applied. Because we hold that the plaintiff paramedics satisfy the four-part test, we need not reach the issue of the two-part integral test. See generally Christian, 108 F.3d at 932 n.2.

931. Although there was some dispute at trial as to the established role of Omaha paramedics at fires, the plaintiffs testified that their only duty was medical support, and they were in fact ordered not to participate in actual firefighting so as to remain available for medical care and to keep from becoming contaminated. Plaintiffs rely on our statement in Christian that paramedics "who are not permitted to fight fires or enter a burning building and who are only dispatched to fires to treat injured individuals are not engaged in fire protection activities under the four-part test." Id. at 932. This proposition however, was taken from Nalley v. Mayor and City Council of Baltimore, 796 F. Supp. 194 (D. Md. 1992), in which the paramedics could not have satisfied the four-part test because they were not trained in firefighting or rescuing victims from fires, and were not authorized to fight fires. See id. at 200.

Even if the plaintiffs performed nothing other than medical duties at a fire, they nonetheless fall within the exemption. We agree with the district court's conclusion that "[t]he plaintiffs' contention overlooks the fact that standby medical support is an activity which is required for and directly concerned with the control or extinguishment of fires . . ." Fighting fires is a dangerous, and at times, complex task. Simply because the division of labor and the development of specialties at a fire scene relegates the paramedics to a medical support function does not mean that they are any less directly concerned with the firefighting effort than the individual who runs into a burning building with a hose.

Not only are the plaintiffs present at a fire for medical support, they are also sworn and trained firefighters who can, if the situation requires, be pressed into a firefighting function outside their medical role. Being available as back-up firefighters certainly places plaintiffs in a status that directly concerns itself with the extinguishment of fires. Further, section 553.210(a) states that exempt activities also include the incidental activities with no direct involvement in firefighting, such as housekeeping and maintenance. Even if the standby medical role of a paramedic is not that of a directly involved firefighter, the rendering of medical aid (or being available to do so)

constitutes a qualified incidental non-firefighting function. Thus, the paramedics are engaged in "fire protection activity" for purposes of 29 U.S.C. § 207(k).

We now turn to the quantitative analysis. Regulations require that no more than twenty percent of the employee's time be devoted to non-exempt work, that is to say, work not related to fire protection activities. See 29 C.F.R. § 553.212(a). The plaintiffs assert that, even if the four-part test of 553.215(a) is satisfied, the City failed to establish that the plaintiffs devoted twenty percent or less of their time to "non-exempt" activities. Like the paramedics in Christian, the plaintiffs here rely on statistical evidence produced at trial which showed that a large majority of the paramedic dispatches were medical calls unrelated to fires or law enforcement activities. Time spent on these calls, they argue, is non-exempt. See O'Neal v. Barrow County Bd. of Comm'rs, 980 F.2d 674, 681 (11th Cir. 1993).

We rejected this argument in Christian. After investigating the nature of non-exempt activity in regard to ambulance and rescue personnel, we concluded that responding to medical and accident calls unrelated to fires or automobile accidents was exempt activity. See Christian, 108 F.3d at 933-34.

> Providing paramedic services on accident and medical emergency calls not stemming from a fire or car accident does not alter the nature of [the paramedics'] duties or cause them to perform tasks unrelated to their job. The district court thus erred by considering time spent on paramedic activities not stemming from a fire or car accident as nonexempt.

Id. at 934. The paramedics in this case responded to fires and provided medical services at those fires as well as on calls unrelated to fires. The district court properly concluded that "[h]ere, as in the Christian case, nearly all of the plaintiffs' time was spent on such activities, related training, support services, waiting for calls, and they did not spend any time on activities unrelated to their firefighting or emergency medical

service activities."  All of these are exempt activities related to fire protection.  See id.

## III.    CONCLUSION

The City carried its burden to show that the plaintiffs were engaged in fire protection activities and did not spend more than twenty percent of their time in non-exempt activities.  The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.