UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN B. LOCKWOOD; THOMAS W.
ALLINGER; LUIS ARANDA; CURTIS G.
CONTEE; DALE EDNOCK; TYRONE
HENSON; MICHAEL J. LOJACONO;
GEORGE J. NUTTER,
Plaintiffs-Appellees,

and

STEPHEN E. ALLEN, SR.; ANGELA M.
COLBERT-QUEEN; WILLIAM A.                                   No. 99-2487
FOLGER, JR.; GEORGE M. GROOMS;
JAMES E. LAWS, III; NOLITA K.
PROCTOR; RUDOLPH THOMAS,
Plaintiffs,

v.

PRINCE GEORGE'S COUNTY,
MARYLAND,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-98-1385-AW)

Argued: May 2, 2000

Decided: June 29, 2000

Before WILKINSON, Chief Judge, and WILLIAMS
and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** John Anthony Bielec, Deputy County Attorney, Upper Marlboro, Maryland, for Appellant. Molly Ann Elkin, MULHOL-LAND & HICKEY, Washington, D.C., for Appellees. **ON BRIEF:** Sean D. Wallace, County Attorney, Upper Marlboro, Maryland, for Appellant. Thomas A. Woodley, MULHOLLAND & HICKEY, Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Prince George's County, Maryland (the County), appeals from the district court's decision in <u>Lockwood v. Prince George's County</u>, 58 F. Supp.2d 651 (D. Md. 1999), in which the court granted a motion for summary judgment in favor of John Lockwood and several other former and current county fire investigators employed by the County's fire department (collectively, Appellees) who sued the County for violations of the overtime pay provisions of the Fair Labor Standards Act (FLSA). In granting summary judgment, the district court rejected the County's legal argument that fire investigators are exempt from the requirements of the FLSA under that statute's "fire protection activities" exemption and held that the County owed Appellees back pay in the form of overtime compensation. The district court also held that Appellees were entitled to liquidated damages under the statute, and it rejected the County's argument that the FLSA could not constitutionally be applied to local governments. Because we agree with the district court that, under the version of the FLSA in effect during the period for which the district court awarded

2

Appellees back pay,**1** Appellees were not employees engaged in fire protection activities and thus were subject to the FLSA's overtime pay requirements, we affirm the district court's grant of summary judgment on the issue of liability. We also hold that the district court did not abuse its discretion when it awarded liquidated damages to Appellees, and we thus affirm its grant of summary judgment on that issue. Finally, we, like the district court, cannot accept the County's invitation to overrule Supreme Court precedent that directly holds that the FLSA constitutionally can be applied to local governments.**2**

_____

**1** Appellees were awarded back pay in the form of overtime compensation for the period from June 7, 1997, to July 31, 1999. During that time, the FLSA provided no statutory definition of an"employee in fire protection activities"; there was only a regulatory definition of the term in 29 C.F.R. § 553.210(a). On December 9, 1999, Congress amended the FLSA by inserting a definition for the term "employee in fire protection activities." See 29 U.S.C.A. § 203(y) (West Supp. 2000). The new subsection reads as follows:

> "Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous material worker, who --
>
> (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and
>
> (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C.A. § 203(y). We do not apply the statutory definition here, as the County cannot be charged with obeying a law not in effect at the time of its actions. Still, we note that, in light of the definition of "employee in fire protection activities" provided by 29 U.S.C.A. § 203(y), the four-part regulatory definition provided by 29 C.F.R.§ 553.210(a) will need to be revised. That definition, as we note later, speaks of an employee engaged in fire protection activities as one who prevents, controls, or extinguishes fires, while 29 U.S.C.A. § 203(y) speaks of an employee engaged in fire protection activities as one who prevents, controls, and extinguishes fires.

**2** The district court also granted summary judgment to the County on the issue of whether the FLSA's two-year or three-year statute of limita-

I.

Appellees sued the County in the United States District Court for the District of Maryland for violating the FLSA by failing to pay them overtime compensation for hours worked in excess of forty hours per week.[3] Appellees worked the following shift schedule: two ten-hour shifts, followed by two fourteen-hour shifts, followed by four days off-duty. As the duties of Appellees are relevant to the first two legal issues in this case, we shall briefly discuss the undisputed nature of those duties.

The Prince George's County Fire Department is organized into the Office of the Fire Chief and three major commands: the Management Services Command, the Special Operations Command, and the Emergency Operations Command. The Office of Fire Investigations, in which the fire investigators operate, is part of the Special Operations Command. County firefighters are within the Emergency Operations Command. According to the "General Order" governing the organization of the fire department and its duties, the Office of Fire Investiga-

_____

tions applies to this case, holding that the two-year statute of limitations applies because the County's violation of the FLSA was not willful. Under 29 U.S.C.A. § 255(a) (West 1998), a two-year statute of limitations applies unless the employer's violation of the FLSA has been willful, in which case a three-year statute of limitations applies. Appellees do not challenge the district court's grant of summary judgment on this issue.

**3** Appellees, along with the County, stipulated to the district court that, until June 7, 1997, they were not due overtime compensation for hours worked in excess of forty hours per week because they were covered by the FLSA's exemption for employees engaged in law enforcement activities. See 29 U.S.C.A. § 207(k) (West 1998). The parties do not dispute that on June 7, 1997, the County took away the arrest powers of all but one of Appellees, Tyrone Henson, leaving the remaining Appellees outside the exemption for law enforcement activities. We note that, while employees operating under the law enforcement exemption are entitled to overtime compensation at a rate of time-and-a-half after working over 171 hours in a 28-day span, employees operating under the fire protection activities exemption are not entitled to overtime compensation until they have worked more than 212 hours in a 28-day span. See 29 C.F.R. § 553.201 (1999).

4

tions is charged with the following responsibilities: (a) enforcing the fire and explosives laws of Maryland and the County; (b) reducing arson, bombings, and other related crimes; (c) determining the cause and origin of all fires and explosions in the County; and (d) "[b]ringing to justice" all violators of fire and explosives laws. (J.A. at 337.)

While it is undisputed that the main task of fire investigators is to investigate the origin of fires rather than to extinguish fires, the County emphasizes that fire investigators are within the chain of command of the fire department and that there is a significant overlap in the training of firefighters and fire investigators; each fire investigator candidate must have a minimum of three years of experience as a firefighter before he may apply for a transfer to the Office of Fire Investigations. The County notes that, while a fire investigator, unlike a firefighter, is assigned to an office building rather than a fire station, he is subject to being transferred to a fire station to work as a firefighter at any time.

Appellees do not dispute the County's assertion that as fire investigators, they can be pressed into firefighting service while they are on the job as fire investigators. While there has always been some dispute as to whether the gear fire investigators carry in their squad cars can be characterized as firefighting equipment or simply protective equipment[4] and as to how quickly fire investigators must arrive on the scene of a fire, the County does not dispute the fact that it can provide no example of an instance in which fire investigators have actually been pressed into service at the scene of a fire to perform firefighting tasks such as working a hose or entering a burning building.

## II.

We review de novo the district court's decision to grant Appellees summary judgment. See Altizer v. Deeds, 191 F.3d 540, 547 (4th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

_____

[4] The squad cars provided by the County for Appellees' use during working hours are equipped with sirens and protective gear such as bunker pants, gloves, and helmets.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

As we review the district court's decision that Appellees are not covered by the "fire protection activities" exemption of § 7(k) of the FLSA and its award of liquidated damages, we must first keep in mind that the County has the burden of showing that it is entitled to the § 7(k) exemption. See Roy v. County of Lexington, 141 F.3d 533, 540 (4th Cir. 1998). In the event that Appellees are not covered by the exemption, the County also has the burden of showing that liquidated damages are not appropriate. See Mayhew v. Wells, 125 F.3d 216, 220 (4th Cir. 1997). Most important, we must keep in mind that, as a matter of law, "exemptions from or exceptions to the Act's requirements, including the § 7(k) exemption, are to be narrowly construed against the employer asserting them." Roy, 141 F.3d at 540 (internal quotation marks omitted). Once a district court determines that an employer violated the FLSA by wrongly claiming the benefit of the exemption, we review its decision to award liquidated damages for abuse of discretion. See id. at 548.

A.

The first issue pressed by the County on appeal is its contention that the district court erred when it held, as a matter of law, that Appellees were not employees engaged in "fire protection activities" under § 7(k) of the FLSA, 29 U.S.C.A. § 207(k) (West 1998). Before addressing the merits of this argument, we first provide an overview of the relevant statutory and regulatory framework, starting with § 7(a) of the FLSA. That section requires employers to pay employees at least time-and-a-half wages for hours worked in excess of forty hours per week. See 29 U.S.C.A. § 207(a) (West 1998). Section 7(k), along with its accompanying regulations, provides a "fire protection activities" exemption to this general rule, stating that an employer need not provide overtime compensation to employees engaged in "fire protection activities" until its employees work over 212 hours

6

during a twenty-eight day period. See 29 U.S.C.A. § 207(k); 29 C.F.R. §§ 553.201 and 553.230 (1999). Both parties agree that Appellees' weekly shift schedules caused them to work more than forty hours per week. They also agree that, if Appellees can be classified as employees engaged in fire protection activities for purposes of 29 U.S.C.A. § 207(k), then they would not be entitled to back pay in the form of overtime compensation because their shift schedules did not cause them to work over 212 hours in a twenty-eight day span.

The FLSA's governing regulations provide a four-part regulatory definition of "employee in fire protection activities." See 29 C.F.R. § 553.210(a) (1999). The County does not challenge the propriety of the district court's use of this regulatory definition, arguing instead that the district court incorrectly applied it to the facts of this case. The regulation provides in relevant part that

> the term "any employee . . . in fire protection activities" refers to any employee (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has the legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental non-firefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills and inspecting homes and schools for fire hazards.

29 C.F.R. § 553.210(a) (1999).[5] The parties agree that the job of fire investigator satisfies parts (1) and (2) of the regulatory definition; they disagree as to whether the job satisfies parts (3) and (4). The County contends that the fire investigators have the responsibility to prevent, control, or extinguish fires, and that the investigators perform activities that are directly concerned with preventing, controlling, or extinguishing fires.

_____

[5] Both 29 C.F.R. §§ 553.210 and 553.215 (1999) also provide alternate definitions that are not relevant here because they apply only to ambulance and rescue service employees.

In its first line of argument, the County offers a broad definition of the word "prevention," which appears in parts (3) and (4) of the regulatory definition. Acknowledging that the main responsibility of fire investigators is to investigate the origins of fires and to determine their causes, the County maintains that the activity of investigating is itself a fundamental part of fire prevention. The County notes that a properly conducted investigation can help catch arsonists who might strike again and perhaps spot trends responsible for the starting of accidental fires. If the activity of investigating the origin of fires, along with catching arsonists, is viewed as fire prevention, then, the County argues, its fire investigators should be covered by the fire protection activities exemption of § 7(k).

The County's argument, however, stretches the term "prevention" too far. In Carlson v. City of Minneapolis, 925 F.2d 264 (8th Cir. 1991) (per curiam), the Eighth Circuit confronted the same question: Do fire investigators, in light of the regulatory definition provided by 29 C.F.R. § 553.210(a), prevent fires? The Eighth Circuit, after observing that it had to construe § 7(k) narrowly against the city, offered the following answer:

> [W]e find unconvincing the city's argument that the investigators prevent fires by "remov[ing] arsonists from society and deter[ring] others from intentionally setting fires." The investigators do not anticipate, counter, or stop fires from happening; rather, their work begins after fires occur when they search for incendiary origins and, if required, identify perpetrators for prosecution. Thus, we do not believe the investigators engage in fire protection activities.

Id. at 265 (second and third alteration in original).[6] We find the reasoning of the Carlson decision persuasive and apply it here. The job of the Prince George's County fire investigators involves only the aftermath of a fire. Once the fire is extinguished, they determine the origin of the fire and, in cases of arson, help track down the arsonist. Like the investigators in Carlson, they do not "anticipate, counter, or

_____

[6] The Carlson court also noted that the fire investigators, as part of their job, "neither extinguish nor control fires." Carlson v. City of Minneapolis, 925 F.2d 264, 265 (8th Cir. 1991) (per curiam).

8

stop fires from happening." Id. The County's contention that its fire investigators "prevent" fires relies upon an indirect connection between post-fire investigations and future fires. The existence of this indirect connection is no doubt plausible. In other circumstances, it might give us greater pause. Because we must construe § 7(k) narrowly against the County, however, we agree with the district court that reliance upon this indirect connection is simply not enough for the County to meet its substantial burden of showing that the § 7(k) "fire protection activities" exemption applies to Appellees.

The County's second line of argument focuses upon the fact that fire investigators can, if needed, be pressed into service to fight fires, i.e., that fire investigators may actually be involved in controlling and extinguishing fires under parts (3) and (4) of the regulatory definition. As noted by the district court, the first, and most obvious, problem with this argument is that the County cannot provide one example of when any Appellee actually suited up and fought a fire. This fact, in light of 29 C.F.R. § 553.212(a) (1999), presents an insurmountable obstacle for this argument. That regulation provides:

> Employees engaged in fire protection . . . activities . . . may also engage in some nonexempt work which is not performed as an incident to or in conjunction with their fire protection . . . activities. For example, firefighters who work for forest conservation agencies may, during slack times, plant trees and perform other conservation activities unrelated to their firefighting duties. The performance of such nonexempt work will not defeat the section . . . 7(k) exception[ ] unless it exceeds 20 percent of the total hours worked by that employee during the workweek or applicable work period. A person who spends more than 20 percent of his/her working time in non-exempt activities is not considered to be an employee engaged in fire protection . . . activities for purposes of this part.

29 C.F.R. § 553.212(a). Because it is undisputed that fire investigators spend the vast majority of their time investigating fires, a role that we have declined to term "prevention," logic compels the conclusion that this regulation forbids the County from applying the § 7(k) "fire protection activities" exemption to Appellees because they

9

"may," but never have been, called upon to control or extinguish fires.**7** Because the County can point to no instance where Appellees have actually been required to fight fires, it follows that more than twenty percent of Appellees' time is spent on nonexempt activities, i.e., investigating the origins of fires and aiding in the finding of arsonists.**8**

_____

**7** The County argues that the fact that its fire investigators may be called upon to extinguish fires distinguishes the case from West v. Anne Arundel County, 137 F.3d 752 (4th Cir.), cert. denied, 525 U.S. 1048 (1998). In West, we found that the Emergency Medical Technicians (EMTs) employed by Anne Arundel County's fire department were not covered by the § 7(k) exemption. See id. at 761. The County notes that part of our determination that the EMTs spent more than 20 percent of their time engaged in nonexempt activities was based upon the fact that EMTs were forbidden, by standard operating procedure, to engage in fire suppression activities. See id. Thus, EMTs necessarily spent zero percent of their time performing the exempt activity of fighting fires. Although the County stresses that, unlike the EMTs in West, Appellees were not barred from fighting fires, this is a distinction without a difference. Like the paramedics in West, Appellees have spent zero percent of their time fighting fires.

**8** In support of its argument, the County relies primarily on two cases: Lang v. City of Omaha, 186 F.3d 1035 (8th Cir. 1999), and Bond v. City of Jackson, 939 F.2d 285 (5th Cir. 1991). In Lang, the Eighth Circuit held that paramedics who were cross-trained as firefighters and available to serve as back-up firefighters were covered by § 7(k) of the FLSA. See id. at 1038-39. The Lang court noted that, in serving a medical support function on the scene of fires, paramedics -- serving only in their role as paramedics -- are directly concerned with the effort to fight, i.e. extinguish, fires. See id. at 1038. To the extent that the County wishes to apply this logic to Appellees and suggest that Lang somehow overrules the Eighth Circuit's previous decision in Carlson v. City of Minneapolis, 925 F.2d 264 (8th Cir. 1991), we make two necessary observations: First, fire investigators, serving only in their role as fire investigators, do not, unlike paramedics, provide support services to firefighters that are directly concerned with fighting fires. Second, nothing in Lang purports to overrule Carlson, a case that specifically dealt with the normal duties of fire investigators and concluded that fire investigators are not covered by § 7(k) because they do not control, prevent, or extinguish fires. See id. at 265. Of course, while the Carlson court gave no indication as to whether the fire investigators in that case could be called upon to fight fires in an emergency, the paramedics in Lang, like

10

We, therefore, affirm the district court's grant of summary judgment to Appellees on this issue.

B.

The County argues that, even if the district court was correct to grant summary judgment to Appellees on the first issue, it erred when

_____

the fire investigators in this case, were available to be pressed into fire-fighting service. See Lang, 186 F.3d at 1038-39. In reaching its holding, the Lang court stated that the paramedics' role as backup firefighters did place them "in a status that concerns itself with the extinguishment of fires." Id. at 1039. We note that, in all probability, the role of backup firefighter did not consume more than eighty percent of the paramedics' time. The Lang court, however, never applied 29 C.F.R. § 553.212(a) (1999) to the paramedics' time spent as backup firefighters, presumably because of its observation that the paramedics' normal role of providing medical support at the scene directly concerns the fighting of fires. Because the logic of Carlson, as well as our discussion of the issue above, indicates that the normal role of the fire investigator does not involve the control, prevention, or extinguishment of fires, an application of 29 C.F.R. § 553.212(a) to Appellees' role as emergency firefighters -- a role that no evidence indicates they have ever had to fill -- necessarily indicates that they spend most of their time doing the nonexempt work of conducting investigations into the cause and origins of fires.

The County next turns to Bond, a case in which the Fifth Circuit held that emergency medical technicians (EMTs) employed by the city of Jackson, Mississippi, were employees engaged in "fire protection activi-ties" under § 7(k) of the FLSA. The Bond court's holding was based, in large part, upon the fact that the EMTs were regularly dispatched to fires and were trained to rescue people from fires. See Bond, 939 F.2d at 287-88. The County contends that, if the EMTs in Bond, who were cross-trained as firefighters, were engaged in fire protection activities, there is no reason that the same cannot be said for Appellees. What the County overlooks is that the Bond court, in making its holding, relied upon the separate regulatory definitions of "employees in fire protection activi-ties," found in both 29 C.F.R. § 553.210 (1999) and 29 C.F.R. § 553.215 (1999), that apply only to ambulance and rescue service employees. See id. Because these definitions do not use the terms "control," "extinguish-ment," and "prevention" in relation to fires, the Bond decision is inappo-site to this case.

11

it granted summary judgment to Appellees on the issue of liquidated damages. Awarding Appellees liquidated damages was in error, it says, because it had a good faith belief, based upon reasonable grounds, that Appellees were covered by § 7(k) of the FLSA.

According to 29 U.S.C.A. § 216(b) (West 1998),"[a]ny employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." (emphasis added). We have stated that the"FLSA plainly envisions that liquidated damages in an amount equal to the unpaid overtime compensation are the norm for violations of § 7 of the Act." Mayhew, 125 F.3d at 220 (emphasis added). Still, a district court can refuse to make an award of limited damages under the following circumstances:

> In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A.§ 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C.A. § 260 (West 1998) (emphasis added); see also Roy, 141 F.3d at 548. Section 260 places "a plain and substantial burden upon the employer to persuade the court that the failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." Mayhew, 125 F.3d at 220 (internal quotation marks omitted).

In this case, we cannot say that the district court abused its discretion in awarding liquidated damages. We have previously held that an employer may not take an "ostrichlike" approach to the FLSA by

12

"`simply remain[ing] blissfully ignorant of FLSA requirements.'"
Roy, 141 F.3d at 548 (quoting Burnley v. Short, 730 F.2d 136, 140
(4th Cir. 1984)). The Second Circuit has noted, along similar lines,
that, within the context of 29 U.S.C.A. § 260, good faith "requires
that an employer first take active steps to ascertain the dictates of the
FLSA and then move to comply with them." Reich v. Southern New
England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 1997).

In granting summary judgment to Appellees on the issue of liqui-
dated damages, the district court noted that, in 1991, the Eighth Cir-
cuit issued its Carlson decision and, in 1993, the Department of Labor
circulated an opinion letter "which expressly held that arson investi-
gators did not fall within the fire protection exemption." Lockwood v.
Prince George's County, 58 F. Supp.2d 651, 658 (D. Md. 1999). The
district court specifically noted that there was no evidence on the
record that the County had attempted to reconcile its policy with the
letter or Carlson or taken any steps to ascertain applicable law that
might impact their pay policy in regard to fire investigators. See id.

We are mindful that the issue of whether Appellees are engaged in
"fire protection activities" within the regulatory definition is one on
which reasonable people can disagree. As noted above, the County's
argument regarding the meaning of "prevention" is certainly not
implausible, and our rejection of it rests upon a narrow construction
of § 7(k) against the County that is compelled by our case law. While
we are loathe to punish any local government for its failure to answer
a close question correctly, the district court's review of the record cor-
rectly indicated that the County never attempted to answer the ques-
tion at all; it simply assumed, without more, that fire investigators
were to be treated in the same fashion under the FLSA as firefighters.[9]

_____

[9] After the Supreme Court decided Garcia v. San Antonio Metro. Tran-
sit Auth., 469 U.S. 528 (1985), which held that the FLSA could constitu-
tionally be applied to local governments, the County formed a temporary
committee to assess whether it was in compliance with the FLSA.
According to the County, the committee, which worked on FLSA issues
for a period of over one year, determined that all firefighters were cov-
ered by § 7(k); the situation of fire investigators was not addressed by the
committee or by subsequent policymakers, however, because "[n]o dis-
tinction" was ever raised between firefighters and fire investigators.

13

Accordingly, we cannot say that the district court abused its discretion when it awarded liquidated damages to Appellees.

C.

Finally, the County argues that, in light of cases from the Supreme Court that have recognized the importance of federalism, such as Printz v. United States, 521 U.S. 898, 935 (1997) (holding that the federal government cannot conscript state officers to enforce federal regulatory programs), and United States v. Lopez , 514 U.S. 549, 567-68 (1995) (refusing to "convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States" by striking down the Gun-Free School Zones Act of 1990), the holding of Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985) (subjecting local governments to the FLSA), has been undermined and thus should be overruled. In rejecting this argument, the district court properly noted that, in West v. Anne Arundel County, 137 F.3d 752 (4th Cir.), cert. denied, 525 U.S. 1048 (1998), this Court rejected the same argument, stating that no Supreme Court case has specifically overruled Garcia and that "any decision to revisit Garcia is not ours to make." Id. at 760. In West, we paid special heed to the Supreme Court's instruction to federal courts of appeals that "`[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" Id. (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989)). In light of West's clear and

_____

(Appellant's Br. at 24.) As noted earlier, however, the parties stipulated to the district court that, until June 1997, when the County took away their powers of arrest, Appellees were covered by§ 7(k)'s exemption for employees engaged in law enforcement activities. See Lockwood v. Prince George's County, 58 F. Supp.2d 651, 653 (D. Md. 1999). Of course, the district court's finding that the County made no attempt to ascertain the applicability of § 7(k)'s "fire protection activities" exemption to Appellees applies to June 1997 and the months that followed.

14

recent statement that it is not our prerogative to overrule <u>Garcia</u>, we necessarily reject the County's invitation to do so here.**10**

III.

For the foregoing reasons, we affirm the district court's decision to grant summary judgment in favor of Appellees.

<u>AFFIRMED</u>

_____

**10** Citing <u>Alden v. Maine</u>, 119 S. Ct. 2240 (1999), for support, the County also argues that under the Eleventh Amendment, counties cannot be subject to suit for violations of the FLSA. That the County would cite to <u>Alden</u> for this proposition is odd because, while the Supreme Court held in that case that Congress cannot subject non-consenting states to private suits brought in state courts, it specifically noted that an "important limit to the principle of sovereign immunity is that it bars suits against States but not lesser entities." <u>Id.</u> at 2267; <u>see also Hess v. Port Auth. Trans-Hudson Corp.</u>, 513 U.S. 30, 47 (1994) (stating that "cities and counties do not enjoy Eleventh Amendment immunity").

15